EXHIBIT - 3

RESPONDENT'S BRIEF

DATED MARCH 11TH, 2008

BY ATTORNEY GENERAL
STATE OF CALIFORNIA
EDMUND G. BROWN JR.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**SCOTT FELIX,**

Defendant and Appellant.

A115717

San Francisco County Superior Court No. 109100
The Honorable Mary Morgan, Judge

**RESPONDENT'S BRIEF**

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

LAURENCE K. SULLIVAN
Supervising Deputy Attorney General

MOONA NANDI
Deputy Attorney General
State Bar No. 168263

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664
Telephone: (415) 703-5962
Fax: (415) 703-1234

Attorneys for Respondent

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE     1

STATEMENT OF FACTS     2

ARGUMENT     3

     I.    THE COURT DID NOT LACK JURISDICTION TO EXTEND APPELLANT'S COMMITMENT AS AN SVP     3

     II.    THE CONSENT DECREE IN *UNITED STATES V. STATE OF CALIFORNIA*, ET AL. HAS NO APPLICATION TO THIS CASE     7

     III.    THE PEOPLE WERE NOT REQUIRED TO PROVE A RECENT OVERT ACT IN ORDER TO COMMIT APPELLANT     11

     IV.    IT WAS NOT ERROR TO PERMIT DR. MARK SCHERRER TO ACT AS AN EVALUATOR PRIOR TO FILING THE SVP PETITION OR TO TESTIFY AT TRIAL     17

         A.   Dr. Scherrer Was Qualified To Evaluate Appellant Under Section 6601, subdivision (d)     18

         B.   Dr. Scherrer's Testimony Was Admissible     19

     V.    APPELLANT WAS PROPERLY COMMITTED TO AN INDETERMINATE TERM BECAUSE THE VERDICT WAS RENDERED AFTER SEPTEMBER 20, 2006     20

     VI.    THE COURT DID NOT ERR IN DISMISSING THE 2006 PETITION     24

CONCLUSION     26

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Superior Court*
(1984) 35 Cal.3d 663                                             7

*Bourquez v. Superior Court*
(2007) 156 Cal.App.4th 1275                                     3

*Dyna-Med v. Fair Employment & Housing Com.*
(1987) 43 Cal.3d 1379                                           5

*Evangelatos v. Superior Court*
(1988) 44 Cal.3d 1188                                          21

*Garcetti v. Superior Court*
(1999) 76 Cal.App.4th 685                                      23

*Hubbart v. Superior Court*
(1999) 19 Cal.4th 1138                            14, 16, 20, 23

*In re Wright*
(2005) 128 Cal.App.4th 663                                     18

*In re Young*
(Wash. 1993) 857 P.2d 989                                      15

*Kansas v. Hendricks*
(1997) 521 U.S. 346                                            16

*Lungren v. Deukmejian*
(1988) 45 Cal.3d 727                                            5

*People v. Alford*
(2007) 42 Cal.4th 749                                          21

*People v. Benson*
(1998) 18 Cal.4th 24                                           13

**TABLE OF AUTHORITIES  (continued)**

                                                                    **Page**

*People v. Buffington*
(1999) 74 Cal.App.4th 1149                                          14, 15

*People v. Butler*
(1998) 68 Cal.App.4th 421                                              18

*People v. Carroll*
(2007) 158 Cal.App.4th 503                                           3, 20

*People v. Cruz*
(1996) 13 Cal.4th 764                                                   5

*People v. Grant*
(1999) 20 Cal.4th 159                                                  21

*People v. Hayes*
(2006) 137 Cal.App.4th 34                                             18

*People v. Haynie*
(2004) 116 Cal.App.4th 1224                                            7

*People v. Hubbart*
(2001) 88 Cal.App.4th 1202                                          14, 15

*People v. Jefferson*
(1999) 21 Cal.4th 86                                                   13

*People v. Ledesma*
(2006) 39 Cal.4th 641                                               21, 22

*People v. Martin*
(1980) 107 Cal.App.3d 714                                             13

*People v. Pompa-Ortiz*
(1980) 27 Cal.3d 519                                                  18

*People v. Scott*
(2002) 100 Cal.App.4th 1060                                           20

## TABLE OF AUTHORITIES  (continued)

**Page**

*People v. Shields*
(2007) 155 Cal.App.4th 559                                                3

*People v. Superior Court (Cheek)*
(2001) 94 Cal.App.4th 980                                               21

*People v. West*
(1999) 70 Cal.App.4th 248                                              23

*People v. Whaley*
(March 8, 2008, H031647)
___ Cal.App.4th ___
08 D.A.R. 3123                                                          3, 21

*Reid v. Balter*
(1993) 14 Cal.App.4th 1186                                             18

*Tapia v. Superior Court*
(1991) 53 Cal.3d 282                                                   21, 22

*Turner v. Superior Court*
(2003) 105 Cal.App.4th 1046                                            25

**Constitutional Provisions**

California Constitution
        Article VI, § 13                                               18

iv

## TABLE OF AUTHORITIES  (continued)

Page

**Statutes**

Code of Civil Procedure
    § 3    21
    § 170.6    2
    § 904.1, subd. (a)(1)    24

Civil Code
    § 3    21

Evidence Code
    § 353, subd. (a)    20

Mentally Disordered Sex Offender Act    7

Penal Code
    § 3    21
    § 1237, subd. (b)    24

Proposition 83    3

Sexually Violent Predator Act    3, 6, 7, 13-16, 20, 22, 23

Sex Offender Punishment, Control, and Containment Act of 2006    6

Statutes 995, chapter 763, § 1    6, 23

Statutes 2006, chapter 337 (Senate Bill 1128)
    § 1    6
    § 55    3, 4
    § 56    5

United States Code, Title, § 1997
    Civil Rights of Institutionalized Persons Act    8

## TABLE OF AUTHORITIES (continued)

**Page**

Welfare and Institutions Code

| | |
|---|---|
| § 6300 | 7 |
| § 6600 | 1 |
| § 6600, subd. (a)(3) | 22 |
| § 6600, subd. (d) | 12, 15 |
| § 6601 | 19 |
| § 6601, subd. (a) | 12, 19 |
| § 6601, subd. (b) | 19 |
| § 6601, subd. (d) | 19 |
| § 6601, subd. (e) | 19 |
| § 6601, subd. (f) | 19 |
| § 6601, subd. (g) | 17, 19 |
| § 6601, subd. (h) | 19 |
| § 6604 | 3 |
| § 6604.1 | 4 |
| § 6605 | 24 |
| § 6608 | 24 |

**Other Authorities**

American Psychiatric Association, Diagnostic and Statistical
      Manual of Mental Disorders (DSM-IV-TR)                  9

Assembly Committee on Appropriations, Analysis of Senate Bill No. 1128
      (2005-2006 Reg. Sess.) as amended June 22, 2006          6

Ballot Pamphlet, Primary Election
      (Nov. 7, 2006) text of Proposition 83                3, 20

Senate Bill 1128                              3, 5-7, 20, 21, 24

Senate Rules Committee, Analysis of Senate Bill No. 1128
      (2005-2006 Reg. Sess.) as amended Aug. 22, 2006          7

Washington Revised Code § 71.09.030                         15

vi

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

---

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**SCOTT FELIX,**

Defendant and Appellant.

A115717

---

### STATEMENT OF THE CASE

Appellant was first committed as a sexually violent predator (SVP) under Welfare and Institutions Code section 6600 et seq.[1] in 1996. (See 1 CT 26.) The instant appeal arises from recommitment petitions filed by the District Attorney of San Francisco in 2002 and 2004 for two-year commitment terms running through July 22, 2006. The 2002 and 2004 petitions were consolidated for trial on September 7, 2004. (See 2 CT 323.)[2] On July 11, 2006, while trial was still pending on the 2002 and 2004 petitions, the District Attorney filed a third recommitment petition that was to correspond to a commitment term running from July 22, 2006 to July 22, 2008. (1 CT 1-2.)

On September 29, 2006, the court denied the District Attorney's motion to consolidate the 2006 petition with the 2002 and 2004 petitions

---

1. Unless otherwise specified, all further statutory references are to the Welfare and Institutions Code.

2. Even though the judgment being challenged was entered on the 2002 and 2004 petitions, the record on appeal begins with the 2006 petition. Appellant did not move to complete the clerk's transcript. Because the missing documentation is voluminous and unnecessary for resolution of the issues raised, neither do we.

1

because the defense had challenged the judge assigned to hear the 2002 and 2004 petitions (see Code of Civ. Proc., § 170.6) in the 2006 proceeding. (2 CT 333; RT [9/26/06] 13.) On October 3, 2006, the judge presiding over the 2002 and 2004 proceedings provisionally granted the District Attorney's motion to amend the two recommitment petitions in light of the passage of Senate Bill 1128 to allege that appellant would be subject to an indeterminate term if the petitions were found true. (RT [10/3/06] 15; see 2 CT 321-326.) On October 18, 2006, following a trial on the 2002 and 2004 petitions, a jury found that appellant qualified as an SVP. (2 CT 405-406.) On October 20, 2006, the court committed him to the custody of the Department of Mental Health for an indeterminate term. (2 CT 407-409; RT [10/20/06] 682-686.) On October 23, 2006, the court granted the People's motion to dismiss the 2006 petition in light of the commitment order on the 2002 and 2004 petitions. (2 CT 410.)

Notice of appeal was filed on October 26, 2006. (2 CT 411-412.)

## STATEMENT OF FACTS

The underlying facts of the case have minimal bearing on the issues raised on appeal. In the few instances where the facts would be helpful, we have incorporated them as part of our argument.

2

## ARGUMENT

### I.

## THE COURT DID NOT LACK JURISDICTION TO EXTEND APPELLANT'S COMMITMENT AS AN SVP

The jury rendered its verdict that appellant was an SVP on October 18, 2006. Prior to September 20, 2006, this would have resulted in a two-year commitment. On that date, however, the Legislature passed Senate Bill 1128, amending the SVP Act to increase the length of the commitment term from two years to an indeterminate term. The bill was passed as an urgency measure, to go into effect immediately (Stats. 2006, ch. 337, § 55), and was thus in effect when appellant was found to be an SVP.[3/]

Appellant contends that because Senate Bill 1128 deleted all provisions for proceedings to extend SVP commitments, the court lacked jurisdiction to extend his commitment. (AOB 18-28.) Appellant's interpretation of Senate Bill 1128 has been rejected in several published decisions. (*People v. Carroll* (2007) 158 Cal.App.4th 503, 508-510; *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, review den.; *People v. Shields* (2007) 155 Cal.App.4th 559, review den.; see also *People v. Whaley* (March 8, 2008, H031647) __ Cal.App.4th __ [08 D.A.R. 3123, 3130, 3132]) There is no cogent reason to depart from these authorities.

At the time the recommitment petition in this case was filed, section 6604 provided in pertinent part:

If the court or jury determines that the person is a sexually violent

---

3. Shortly thereafter, on November 7, 2006, the voters enacted Proposition 83, also known as "Jessica's Law," which made several changes to the SVP Act. (Ballot Pamp., Primary Elec. (Nov. 7, 2006) text of Prop. 83, pp. 135-138.) It, too, made the commitment term for SVP's indeterminate. (§ 6604.)

predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, and the person shall not be kept in actual custody longer than two years *unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article* . . . .

(Italics added.)

Likewise, section 6604.1 provided:

(a) The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The initial two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. For any *subsequent extended commitments*, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment.

(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for *purposes of extended commitments*. The rights, requirements, and procedures set forth in Section 6603 shall apply to *extended commitment proceedings*.

(Italics added.)

Effective September 20, 2006, section 6604 was amended to provide in pertinent part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health." (Stats. 2006, ch. 337 (S.B. 1128), § 55, eff. Sept. 20, 2006.) Similarly, section 6604.1 was amended to provide:

(a) The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section.

4

(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed pursuant to a trial conducted pursuant to subdivision (f) of Section 6605. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings.

(Stats. 2006, ch. 337 (S.B. 1128), § 56.)

Appellant contends that because Senate Bill 1128 removed all provisions referring to proceedings to extend an SVP commitment, and contained no "savings clause" with respect to pending cases, the trial court had no jurisdiction to extend his commitment and was required to release him into the community even if a mental disorder still made him likely to engage in sexually violent predatory behavior. Respondent submits that the Legislature could not possibly have intended such a result; indeed, the interpretation urged by appellant would yield a result exactly opposite of what the Legislature sought to achieve with Senate Bill 1128.

The paramount rule of statutory construction is that the court must effectuate the intent of the Legislature. The court looks first to the words of the statute, giving the language its ordinary import and construing it in context, keeping in mind the statutory purpose. Where uncertainty exists, the court should consider the consequences that will flow from a given interpretation. It may also consider the legislative history of the statute and the wider historical circumstances of its enactment. (*Dyna-Med v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) An ambiguity will not be interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. (*People v. Cruz* (1996) 13 Cal.4th 764, 782-783.) "The intent prevails over the letter, and the letter will, if possible, be read so as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

When it enacted the SVP Act in 1996, the Legislature declared:

The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they were incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.

(Stats. 1995, ch. 763, § 1.)

Nothing in Senate Bill 1128 suggests the Legislature has retreated from above view. On the contrary, by replacing the two-year term with an indeterminate term, the Legislature implicitly reaffirmed its commitment to safeguard the community by keeping mentally disordered and dangerous sex offenders in custody until they no longer present a threat. The changes at issue here were part of an omnibus bill known as the Sex Offender Punishment, Control, and Containment Act of 2006 (Stats. 2006, ch. 337 (S.B. 1128), § 1), which made "dozens of changes to the body of law relating to sex offenders," including "major changes to the Sexually Violent Predator (SVP) program, increasing commitments from two years to indeterminate, tolling parole while a persons [sic] is an SVP, and making completion of sex offender treatment programs a condition of release." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended June 22, 2006, pp. 1-2.) Other changes include increased penalties for sex offenses, increased penalties for luring children to a meeting for sexual purposes, extended periods of parole for violent sex offenders, and the creation of a state and local scheme for assessing the risk posed by such offenders. (*Ibid.*) According to the author, the bill was designed as a "comprehensive, proactive approach to preventing the

6

victimization of Californians by sex offenders." (Sen. Rules Com., Analysis of S.B. No. 1128 (2005-2006 Reg. Sess.) as amended Aug. 22, 2006, p. 7.) In light of this purpose, appellant's position that Senate Bill 1128 required everyone already committed under the SVP Act to be released is absurd.

*Baker v. Superior Court* (1984) 35 Cal.3d 663 is instructive. There, the Supreme Court held that persons committed as mentally disordered sex offenders (MDSO's) under former section 6300 et seq. could be recommitted as such notwithstanding the repeal of the MDSO Act without a savings clause for persons committed before the repeal. The court noted, "By and large, the indications of legislative intent are contrary to petitioners' position. For one thing, as the People note, the legislative purpose in repealing MDSO commitment procedures was to treat sexual offenders more harshly. In view of that purpose, it would be unreasonable to allow dangerous MDSOs to be released earlier than they would otherwise have been because of the fortuitous circumstance that the Legislature has decided to eliminate the MDSO program *prospectively*." (*Baker*, *supra*, at p. 666.) Likewise here, it would be anomalous to release everyone committed under the SVP Act over the last 10 years because the Legislature prospectively increased the term of commitment from two years to an indeterminate term. The plain meaning rule, which appellant invokes, does not require that absurd result. (*People v. Haynie* (2004) 116 Cal.App.4th 1224, 1228 ["We do not follow the plain meaning rule if to do so would frustrate the purpose of the statute or lead to an absurd result."].)

## II.

### THE CONSENT DECREE IN *UNITED STATES V. STATE OF CALIFORNIA*, ET AL. HAS NO APPLICATION TO THIS CASE

Prior to trial, appellant filed a motion to dismiss the SVP petition against him on the ground that the state was estopped from bringing it by virtue

7

of the May 15, 2006, consent decree in *United States v. State of California*, et al. (No. CV-06-2667-GPS). (1 CT 134-233.) The People filed an opposition (1 CT 255-273), and on September 11, 2006, the court denied the motion. (2 CT 316; RT [9/11/06] 9.) Appellant contends this was error. (AOB 29-37.) He is mistaken.

In May 2006, the United States filed a complaint pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, against the State of California, the governor of California, the director of the California Department of Mental Health, and the executive directors of Metropolitan State Hospital and Napa State Hospital, seeking to remedy an alleged pattern of practice of conduct that was alleged to deprive patients at Metropolitan and Napa State Hospitals of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States. Simultaneously, the parties entered a consent judgment addressing, inter alia, how psychiatric assessments and diagnoses would be conducted at Metropolitan and Napa State Hospitals in the future. (1 CT 142, 160-165.) In August 2006, the parties agreed to amend the consent judgment to add Atascadero and Patton State Hospitals as parties. (2 CT 283-300.)

The two experts who testified on behalf of the People at appellant's trial diagnosed him with paraphilia NOS. (RT 42, 49-50, 509, 513.) Contrary to appellant's argument, the consent judgment does not state or suggest that paraphilia NOS is an improper basis for civil commitment. Rather, the consent judgment requires only that "clinically justifiable diagnoses are provided for each individual," that "the documented justification of the diagnoses is in accord with the criteria contained in the most current DSM," and that "diagnoses listed as 'NOS' are timely addressed (i.e., within 60 days), through clinically appropriate assessments, and resolved in a clinically justifiable manner." (1 CT 162.) This language does not eliminate NOS diagnoses as

8

invalid or improper; it simply requires review of NOS diagnoses to ensure that
more specific diagnoses that may be appropriate have been ruled out. Indeed,
the consent judgment itself requires diagnoses to be in accord with the
Diagnostic and Statistical Manual of Mental Disorders (DSM). (1 CT 160,
162.) That manual expressly recognizes the need for NOS diagnoses and
specifically recognizes paraphilia NOS as a permissible diagnosis. (American
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders
(DSM-IV-TR) (4th ed., text revision, 2000) pp. 4, 567, 576.) The experts
called by the prosecution at appellant's trial used the DSM to diagnose
appellant and explained the basis for their diagnoses at trial. (RT 42-44, 512-
513.)

Appellant asserts that the DSM explicitly states that "while
diagnosticians may resort to 'NOS' labels as fallbacks, 'NOS' diagnoses are
neither complete nor effective." (AOB 34.) The DSM states no such thing.
Instead, it lists four situations in which an NOS diagnosis may be appropriate.
These include situations where "[t]he presentation conforms to the general
guidelines for a mental disorder in the diagnostic class, but the symptomatic
picture does not meet the criteria for any of the specific disorders. This would
occur either when the symptoms are below the diagnostic threshold for one of
the specific disorders or *when there is an atypical or mixed presentation*."
(American Psychiatric Association, Diagnostic and Statistical Manual of Mental
Disorders, *supra*, p. 4, italics added.) The DSM describes the essential features
of a paraphilia as "recurrent, intense sexually arousing fantasies, sexual urges,
or behaviors generally involving 1) nonhuman objects, 2) the suffering or
humiliation of oneself or one's partner, or 3) children or other nonconsenting
persons that occur over a period of at least 6 months (Criterion A)." (*Id.* at p.
566.) With exceptions not relevant here, "the diagnosis is made if the behavior,
sexual urges, or fantasies cause clinically significant distress or impairment in

9

social, occupational, or other important areas of functioning (Criterion B)." (*Ibid.*) The DSM further states, "The Paraphilias described here are conditions that have been specifically identified by previous classifications. . . . A residual category, Paraphilia Not Otherwise Specified, includes other Paraphilias that are less frequently encountered." (*Id.* at pp. 566-567.) In the section on Paraphilia Not Otherwise Specified, the manual explains, "This category is included for coding Paraphilias that do not meet the criteria for any of the specific categories. Examples included, but not limited to, telephone scatologia (obscene phone calls), necrophilia (corpses), partialism (exclusive focus on part of body), zoophilia (animals), coprophilia (feces), klismaphilia (enemas), and urophilia (urine)." (*Id.* at p. 576.) As Dr. Scherrer further explained at trial:

[A]s much—as the book tries to categorize all the problems that people can have and put them in categories, every single one of those major categories has a diagnosis called not otherwise specified.

There is mood disorder, not otherwise specified. There is anxiety disorder, not otherwise specified. So there is always another category that says these are for mental disorders of this major type but which we haven't listed and described completely in this. And it's to allow the mental health professional to diagnose what he recognizes as a mental disorder, but one which is not specifically listed and described in detail in the book.

(RT 43-44; see also RT 201.)[4]

In short, a diagnosis of paraphilia NOS is not "incomplete and only preliminary to a true, 'clinically justifiable' diagnosis." (AOB 35.) It is a valid diagnosis in and of itself, and the parties to the consent judgment did not stipulate otherwise. They agreed only to review NOS diagnoses to ensure they were being assigned properly.

---

4. We cite the jury trial transcripts by page number only as they are not assigned volume numbers.

10

Appellant suggests that his NOS diagnosis was not "timely addressed" and resolved as required by the consent judgment because he has carried the diagnosis for over 10 years. (AOB 35, 36.) At the time of the jury's verdict, however, the consent judgment had been in existence and applicable to Atascadero State Hospital for less than 60 days. Presumably by now the diagnosis has been reviewed and either confirmed or modified as appropriate. The record on appeal, in any event, does not indicate otherwise.

## III.

## THE PEOPLE WERE NOT REQUIRED TO PROVE A RECENT OVERT ACT IN ORDER TO COMMIT APPELLANT

Prior to trial, appellant filed a motion to dismiss the SVP petition on the ground that it failed to allege a "recent overt act" of criminal sexual violence prior to the initiation of SVP proceedings in 1996. (1 CT 234-247.) The People filed an opposition (1 CT 255-262), and on September 11, 2006, the court denied the motion (2 CT 316; RT [9/11/06] 9). Appellant contends this was error. (AOB 37-46.) He is mistaken.

Appellant was paroled from his 1982 sex offenses in December 1993. In May 1994, his parole was revoked for six months after he violated various parole conditions, including assault and battery, possession of a dangerous weapon, and possession of stolen property. In March 1995, his parole was revoked for one month after he was arrested for being out past his curfew. In August 1995, he was arrested for stalking, but continued on parole. On March 2, 1996, his parole was revoked for nine months after he was arrested for engaging in assaultive conduct and being drunk in public. Prior to his release, the People filed their first SVP petition against him. He has remained in custody continuously since then. (See 1 CT 18-20, 72, 256.)

11

Appellant contends that "since he was out of custody for an extended period of time," the state was required to allege and prove a recent overt act in order to proceed on the petitions. (AOB 39.) There are several problems with his proposition. First, appellant was *not* out of custody for an extended period of time. On the contrary, since 1982, he has never been out of custody for even one continuous year. (RT 554-555.) Second, the time for making this argument was when the initial SVP petition was filed against him in 1996, not 10 years and several recommitments later. Appellant certainly has had little or no opportunity to sexually assault women while in custody at the state hospital.

Finally, the claim fails on the merits. The People initiated SVP proceedings against appellant while he was in prison, as required by section 6601, subdivision (a). Section 6600, subdivision (d) explicitly provides that "'[d]anger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody." Appellant contends, however, that the People were required to prove a recent overt act while he was *out* of custody. He argues that principles of statutory construction compel such an interpretation because the phrase "while the offender is in custody" would otherwise be surplusage. While acknowledging that the People do not have to prove a recent overt act if the person has been incarcerated for a long time and thus hindered from committing one, he claims that proof of such an act is required by the statute if the person has recently been out of custody. Recognizing that a person who has been out of custody for a short period of time between incarcerations would not have sufficient opportunity to commit a recent overt act, appellant further implies a requirement that the person be out of custody for an extended period of time (a requirement he himself does not meet). (AOB 40-41.)

Respondent submits that had the Legislature intended to require a recent overt act to commit people who were recently out of custody for an

12

extended period of time it would have said so plainly. The sin of surplusage is surely more benign than that of including an element by negative implication. The fundamental rule of statutory construction is to ascertain and effectuate the intent of the Legislature, and the most reliable indicator of legislative intent is the words of the statute. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.) Where the words of the statute are clear and unambiguous, there is no need for construction and courts should not indulge in it. (*People v. Benson* (1998) 18 Cal.4th 24, 30.) Here, nothing in the plain words of the statute require proof of a recent overt act under the circumstances appellant prescribes. This Court should not accept his invitation to conjure such a requirement from statutory language clarifying that such proof is *not* necessary.

Appellant's due process argument fails as well. The fact that he was out of custody under parole supervision for a few months in 1994 and 1995 with no reported incidents of sexually violent behavior is hardly strong evidence of non-dangerousness.[5/] It is certainly not so substantial that the People, as a matter of due process, should be required to prove the existence of a recent overt act notwithstanding other strong evidence of appellant's continuing disorder and dangerous disposition. (Cf. *People v. Martin* (1980) 107 Cal.App.3d 714, 725 [due process does not require People to prove recent overt act to extend commitment of MDSO defendant who has been in custody in the state hospital and had little opportunity to reoffend where there is other strong evidence of his continuing disorder and dangerous disposition].)

As previously noted, the SVP Act states that proof of a recent overt act while the offender is in custody is unnecessary. The statute makes no exception for situations where the most recent prison commitment is relatively

---

5. As Dr. Arnold pointed out at trial, most sexual offenses go undetected. (RT 555.) Moreover, appellant "really wasn't out there for long enough time to feel comfortable that he has really gotten over a[n] issue." (*Ibid.*)

short (and the person was thus recently out of custody). Our Supreme Court nevertheless has found the statute constitutional. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138.) In particular, it found that the SVP Act complies with due process by requiring a finding of current dangerousness before a person can be committed. (*Id.* at pp. 1161-1164.) The court rejected the notion that due process requires proof that the person would inflict harm immediately upon release before the state may involuntarily confine him. (*Id.* at p. 1163.) It likewise rejected Hubbart's suggestion that the statute "does little more than establish a 'presumption' of danger based on past crimes," noting that "the United States Supreme Court has consistently upheld commitment schemes authorizing the use of prior dangerous behavior to establish both present mental impairment and the likelihood of future harm," that "the Legislature could reasonably conclude that the evidentiary methods contemplated by the Act are sufficiently reliable and accurate to accomplish its narrow and important purpose," and that "the Act precludes commitment based solely on evidence of . . . prior crimes." (*Id.* at pp. 1163-1164.) Although the *Hubbart* court did not specifically address the "recent overt act" language in its analysis of the issue of dangerousness, the court was clearly aware that the statute does not require such an act. Indeed, the court noted as much in describing the SVP Act early in its opinion. (*Id.* at p. 1144.) If a recent overt act were required in order for the SVP Act to pass constitutional muster, either in general or where the suspected SVP's most recent prison commitment was relatively short and not for a sexually violent offense, the Supreme Court surely would have said so.

*People v. Hubbart* (2001) 88 Cal.App.4th 1202 and *People v. Buffington* (1999) 74 Cal.App.4th 1149 also refute appellant's claim. Both cases held that the SVP Act does not violate equal protection because its evidentiary standard is not identical to that of other California civil commitment schemes. "While there is no need for proof of a recent overt act while the

14

offender is in custody (Welf. & Inst. Code, § 6600, subd. (d)), it is clear that the SVPA permits civil commitment only upon a finding that the person has *current* psychological symptoms that render him or her likely to reoffend." (*People v. Hubbart, supra*, 88 Cal.App.4th at p. 1219.) *Buffington* stated, "[W]e conclude the SVPA requires 'recent objective indicia of the defendant's condition' and a 'recent objective basis for finding that an inmate is likely to reoffend.' The SVPA sets forth a comprehensive administrative process for screening and evaluation, requiring professional assessments of various diagnoses and specified risk factors; it then subjects these assessments to a thorough judicial process, including a trial under the standard of proof of beyond a reasonable doubt. Contrary to Buffington's claim, 'current psychological symptoms are needed' to establish that a person is an SVP. (§§ 6600, subds. (a), (c); 6601, subds. (b), (c).)" (*Buffington, supra*, 74 Cal.App.4th at p. 1161.)

Appellant's reliance on *In re Young* (Wash. 1993) 857 P.2d 989, 993, a case arising under Washington's SVP law, is misplaced. Unlike California, which requires a person to be in custody in order for SVP proceedings to be initiated (though not necessarily for a sexually violent offense), Washington permits an SVP petition to be filed when a person's sentence for a sexually violent offense is about to expire *or has expired*. (Wash. Rev. Code § 71.09.030; *In re Young* (Wash. 1993) 857 P.2d 989, 993.) In *Young*, the Washington Supreme Court held that evidence of a recent overt act was not required for individuals who were currently incarcerated for a sexually violent offense. However, where an individual had been released from confinement and lived in the community, proof of a recent overt act was necessary to satisfy due process. (*Id.* at p. 1009.)

This court should reject appellant's invitation to rely on a case from a foreign jurisdiction under a foreign and materially distinct statute when

15

California precedent uniformly refutes—indirectly, if not directly—appellant's argument that our SVP Act violates due process (at least as applied to him and others in his position). The Washington Supreme Court is, in any event, wrong. The United States Supreme Court has never required proof of a recent overt act to justify a finding of dangerousness. In upholding Kansas's SVP law, the court stated: "The statute . . . requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated. As we have recognized, '[p]revious instances of violent behavior are an important indicator of future violent tendencies.' [Citations.]" (*Kansas v. Hendricks* (1997) 521 U.S. 346, 357-358.) The high court's words are entirely in keeping with the California Supreme Court's understanding that "use of prior dangerous behavior to establish both present mental impairment and the likelihood of future harm" is constitutionally permissible. (*Hubbart v. Superior Court, supra*, 19 Cal.4th at p. 1164.)

Finally, assuming, arguendo, that a recent overt act was required to prove appellant's dangerousness, there was one here. Indeed, there were two. Appellant's most recent incarceration, occurring in March 1996, was for engaging in assaultive conduct and being drunk in public. According to Dr. Scherrer, appellant's alcohol problem "is important in his case because it's part of his sex offending. . . . [D]rugs and alcohol reduce inhibitions, they reduce impulse control, they reduce cognitive skills, problem solving skills, coping skills. All of those things are diminished by the drug and alcohol abuse." (RT 188.) Appellant himself told Dr. Scherrer that alcohol played a role in his past offenses. "[I]n his own words, it was like there were two people in him. . . . [T]he paraphilia, the sexual deviancy, it was under control when I wasn't loaded. . . . [B]ut when I got loaded that it was all hell breaking loose sexually. And so the deviancy was being acted out." (*Ibid*.; see also 1 CT 90 [Dr.

16

Scherrer's evaluation, in which he states that appellant's substance abuse "serves [as] an increased risk of sexual re-offense. This is even of greater concern in Mr. Felix's case, as he himself implicates his abuse of substances in his offense cycles."].) Under the circumstances, appellant's 1996 confinement for alcohol use was a recent overt act that proved his dangerousness at the time of the initial SVP petition.

If appellant's continued alcohol use were not enough, however, appellant was also arrested in August 1995 for stalking a woman. Appellant had met the woman, who worked with former prisoners, in the past. On this occasion, he waved at her when encountering her on her bicycle. She indicated she did not want to talk to him and moved on. He then followed her in his car and staring at her, frightening her enough that she tried to flee and hide. When appellant brought his car around to where she was hiding, she told him directly, "I don't want to have any contact with you," at which point he left her alone. The Board of Prison Terms found that he had violated the terms of his parole by engaging in stalking; that decision was ultimately overturned on appeal. (1 CT 20, 72; RT 545-547.) Appellant's conduct demonstrated nevertheless that he remained a danger. As Dr. Arnold noted, "We know that there were some other instances where some women felt intimidated by him. I think that staring thing is something that, you know, sort of turns him on." (RT 555.) Accordingly, even if proof of a recent overt act were required in appellant's case, the requirement was met.

## IV.

## IT WAS NOT ERROR TO PERMIT DR. MARK SCHERRER TO ACT AS AN EVALUATOR PRIOR TO FILING THE SVP PETITION OR TO TESTIFY AT TRIAL

Appellant contends that Mark Scherrer, one of the state's two experts, was not an "independent professional" under section 6601, subdivision (g), and

17

therefore not qualified to evaluate appellant for purposes of determining whether an SVP petition should be filed against him. He contends that Dr. Scherrer's testimony was inadmissible at trial for the same reason. (AOB 46-49.) He is mistaken.

## A. Dr. Scherrer Was Qualified To Evaluate Appellant Under Section 6601, subdivision (d)

Appellant contends that Dr. Scherrer was disqualified from evaluating him for purposes of determining whether an SVP petition should be filed. He did not move to dismiss the SVP petition on this ground in the trial court. Nor did he file a petition for writ of mandate. In order to obtain relief from the alleged error at this juncture appellant must show that any error in the prosecution's reliance on Dr. Scherrer to file the petition deprived him of a fair trial or otherwise resulted in prejudice. (*People v. Butler* (1998) 68 Cal.App.4th 421, 435 [SVP commitment will not be reversed based on nonjurisdictional defect in pretrial commitment proceedings unless defendant can show he was denied a fair trial or otherwise suffered prejudice]; accord, *People v. Hayes* (2006) 137 Cal.App.4th 34, 49-51; *People v. Talhelm, supra*, 85 Cal.App.4th at p. 405; cf. *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529; *Reid v. Balter* (1993) 14 Cal.App.4th 1186, 1195; see also Cal. Const., art. VI, § 13.) This he cannot do because, as explained in Argument IV.B., the People were entitled to rely on Dr. Scherrer's testimony at trial. Accordingly, "[t]he only possible prejudice [appellant] could have suffered was in the fact that the petition actually proceeded to trial . . . ." (*In re Wright* (2005) 128 Cal.App.4th 663, 673.) That is not enough: "[T]he fact [appellant] was compelled to 'participate in an otherwise fair trial' does not demonstrate prejudice." (*Id.* at p. 674.)

In any event, Dr. Scherrer was not disqualified from acting as a pretrial evaluator. Appellant misunderstands the law. The 2006 SVP petition filed against appellant—the only petition included in the record on appeal—was

supported by the evaluations of two psychologists, Amy Phenix and Mark
Scherrer, who concurred that appellant met the criteria for commitment. (1 CT
12-124.) Under these circumstances, appointment of a second set of
"independent" evaluators was unnecessary.

Section 6601 requires the Director of Corrections to refer suspected
SVP's in his custody for evaluation prior to their release. (§ 6601, subd. (a).)
If after screening the Department of Corrections and the Board of Parole
Hearings determine that the person is likely to be an SVP, the person must be
referred to DMH for full evaluation. (§ 6601, subd. (b).) Full evaluation by
DMH requires that the person be evaluated by two psychiatrists or
psychologists. If both doctors concur that the person is an SVP, the Director
of Mental Health shall forward a request to the district attorney that a petition
to commit the person as an SVP be filed. (§ 6601, subds. (d) & (h).) If there
is a split of opinion, however, "the Director of Mental Health shall arrange for
further examination of the person by two independent professionals selected in
accordance with subdivision (g)" (§ 6601, subd. (e)), who must concur that the
person is an SVP before a petition may be filed (§ 6601, subd. (f)). Section
6601, subdivision (g) requires, inter alia, that any "independent professional"
not be a state government employee. Because there was no split of opinion in
this case, appointment of independent professionals was unnecessary. Section
6601 does not require that the first set of evaluators be independent
professionals. Dr. Scherrer, a state government employee, was therefore not
disqualified from acting as a first-level evaluator under section 6601,
subdivision (d) to determine whether an SVP petition should be filed against
appellant.

## B. Dr. Scherrer's Testimony Was Admissible

Appellant also contends that Dr. Scherrer's status as a state employee
rendered his trial testimony inadmissible. The claim is forfeited for failure to

19

object on this ground below. (Evid. Code, § 353, subd. (a).) It is also meritless. The SVP Act places no restriction on the number of experts the People call at trial or their qualifications.[6/] The two-concurring-experts provision and the "independent professional" provision are requirements that must be met before an SVP petition may be filed. Once that stage has passed and the case comes to trial, the only requirement is that the People prove the person is an SVP and do so beyond a reasonable doubt. This may be done with a single expert if the People choose and it is of no moment whether the person is a state employee or an independent professional. (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1063-1064.)

## V.

## APPELLANT WAS PROPERLY COMMITTED TO AN INDETERMINATE TERM BECAUSE THE VERDICT WAS RENDERED AFTER SEPTEMBER 20, 2006

Senate Bill 1128 went into effect on September 20, 2006. The jury rendered its verdict finding that appellant was an SVP on October 18, 2006, after the law had been changed. (2 CT 405-406.) Appellant nevertheless contends that committing him to an indeterminate term constituted an impermissible retroactive application of the law. (AOB 49-56.)[7/] This argument was rejected in *People v. Carroll, supra,* 158 Cal.App.4th at pages 512-515 and *Bourquez v. Superior Court, supra,* 156 Cal.App.4th at pages

---

6. Nor, for that matter, does the Act require the People to use the same evaluators at trial as they did to support the filing of the SVP petition. The most recent SVP petition in this case, for example, was supported by evaluations by Dr. Mark Scherrer and Dr. Amy Phenix. At trial, however, the People called Dr. Scherrer and Dr. Dale Arnold.

7. Retroactive application would not violate the constitutional prohibition against ex post facto laws, which does not apply in SVP proceedings. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171-1179.)

1288-1289. (See also *People v. Whaley, supra*, 08 D.A.R. at pp. 3130, 3133.)
It should be rejected by this Court as well.

"A new or amended statute applies prospectively only, unless the
Legislature clearly expresses an intent that it operate retroactively." (*People v.
Ledesma* (2006) 39 Cal.4th 641, 664, citing *Tapia v. Superior Court* (1991) 53
Cal.3d 282, 287; see also *People v. Alford* (2007) 42 Cal.4th 749; *Evangelatos
v. Superior Court* (1988) 44 Cal.3d 1188, 1207-1208; cf. Pen. Code, § 3; Civ.
Code, § 3; Code Civ. Proc., § 3.) Senate Bill 1128 is silent with respect to
retroactive application. The legislative history also fails to indicate that the
Legislature intended the change from two year to indeterminate commitments
to apply retroactively. Here, however, the amendment is being applied
prospectively because appellant was not found to be an SVP until after its
effective date.

> In general, application of a law is retroactive only if it attaches new
> legal consequences to, or increases a party's liability for, an event,
> transaction, or conduct that was *completed* before the law's effective
> date. (*Landgraf v. USI Film Products* [(1994)] 511 U.S. 244, 269-
> 270 & fn. 23; see also *Rodriguez v. General Motors Corp.* (9th Cir.
> 1994) 27 F.3d 396, 398; *Tapia v. Superior Court* (1991) 53 Cal.3d
> 282, 291; *Kizer v. Hanna* (1989) 48 Cal.3d 1, 7; *People v. Weidert*
> (1985) 39 Cal.3d 836, 851.) Thus, the critical question for
> determining retroactivity usually is whether the last act or event
> necessary to trigger application of the statute occurred before or after
> the statute's effective date. (*Travenol Laboratories, Inc. v. U.S.* (Fed.
> Cir. 1997) 118 F.3d 749, 752; *McAndrews v. Fleet Bank of
> Massachusetts, N.A.* (1st Cir. 1993) 989 F.2d 13, 16.) A law is not
> retroactive "merely because some of the facts or conditions upon
> which its application depends came into existence prior to its
> enactment." (*Kizer v. Hanna, supra*, 48 Cal.3d at p. 7.)

(*People v. Grant* (1999) 20 Cal.4th 159, 157.)

An SVP case is not a criminal action, but a special proceeding of a
civil nature. (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980,
988.) Even in criminal cases, however, "[a]pplication of a change in law that

21

occurred after the crime took place is retroactive only if it changes the legal consequences of a defendant's past conduct." (*Ledesma, supra,* at 39 Cal.4th at p. 664, quoting *Tapia, supra,* 53 Cal.3d at p. 298.) In *Ledesma,* the Supreme Court held that application of a change in the procedures for voir dire that had taken place after the date of the defendant's crime and his first trial, but before his retrial, did not constitute a retroactive application. As the court noted, "The operative date for determining prospective application of a statute is the 'date of the conduct regulated by the statute.'" (*Ledesma, supra,* at p. 664, quoting *Tapia, supra* at p. 291.) Because the statute in question governed the conduct of the jury selection portion of the trial, "application of the statute that was in effect at the time defendant's jury was selected is a proper, prospective application of the statute." (*Ledesma, supra,* at p. 664.)

In an SVP case, the "date of the conduct regulated by the statute" is the date on which the jury finds, or the court declares, the person to be an SVP. Unlike in a criminal trial, where the verdict reflects a finding that the defendant is liable for an act committed in the past, the verdict in an SVP trial reflects a finding that the person is, at that moment, an SVP. Stated another way, when the state files an SVP petition seeking an individual's commitment, it is not seeking redress for a wrong committed by that person. The purpose of commitment is to treat the individual and protect society in light of an existing mental defect. Welfare and Institutions Code section 6600, subdivision (a)(3) thus provides that a person is an SVP if he has a *current* diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior in the future. (§ 6600, subd. (a)(3).) "Current," for this purpose, means at the time of trial, and more specifically, at the time of the verdict, not at the time the petition was filed. It is irrelevant whether respondent met the criteria for commitment at any time in the past because the purpose of the SVP Act is to protect the public

22

from individuals who are *presently* mentally disordered and dangerous. (Stats. 1995, ch. 763, § 1.)

Our conclusion is supported by the Supreme Court's decision in *Hubbart v. Superior Court, supra,* 19 Cal.4th 1138. There, in the course of explaining why the SVP Act's required finding of dangerousness satisfies substantive due process, the court stated, "[T]he statute clearly requires the trier of fact to find that an SVP is dangerous *at the time of commitment.* The statutory criteria are expressed in the present tense, indicating that each must exist *at the time the verdict is rendered.* In addition, a person cannot be adjudged an SVP unless he 'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which 'makes' him dangerous and 'likely' to reoffend. [Citation.]" (*Hubbart, supra,* 19 Cal.4th at p. 1162, italics added; see also *id.* at p. 1169 ["SVP's must be dangerous at the time of commitment"].) These remarks demonstrate that our Supreme Court understood the issue in an SVP case to be the person's mental condition at the time of the verdict and not at the time of the filing of the petition.

*Garcetti v. Superior Court* (1999) 76 Cal.App.4th 685 provides further support for our position that in SVP cases, it is the time of the verdict, rather than the time the petition was filed, that is relevant for purposes of retroactivity analysis. There, a petition for commitment was filed before the effective date of a 1996 amendment to the Act that clarified that convictions obtained under the pre-1977 indeterminate sentencing law qualified as predicate offenses. Trial, however, was held after the amendment was in effect. The Court held that the amendment applied: "We do not believe the date the [SVP] petition is filed is the significant point with respect to retroactivity. That point is not reached until trial and adjudication under the Act." (*Id.* at p. 694; see also *People v. West* (1999) 70 Cal.App.4th 248, 261-262 [finding that the 1996

23

amendment did not apply there because defendant's trial took place before its effective date].)

Because the jury's finding that appellant was an SVP occurred after the effective date of Senate Bill 1128, the trial court correctly determined that he should be committed for an indeterminate term.

## VI.

## THE COURT DID NOT ERR IN DISMISSING THE 2006 PETITION

On October 23, 2006, the court, over defense objection, granted the People''s motion to dismiss the 2006 petition in light of the indeterminate term commitment on the 2002 and 2004 petitions. (2 CT 410; RT [10/23/06] 3.) Appellant contends that even assuming the court was correct to impose an indeterminate term on the 2002 and 2004 petitions, it was error to dismiss the 2006 petition. (AOB 56-58.) Respondent submits that the dismissal of the 2006 petition is not an appealable order. It is not a judgment that was adverse to him. (Code Civ. Proc., § 904.1, subd. (a)(1).) Nor was it an order made after judgment affecting appellant''s substantial rights given his assumption, for purposes of this argument, that the indeterminate term was properly imposed on the 2002 and 2004 petitions. (Pen. Code, § 1237, subd. (b).) Under the circumstances, appellant has no standing to object to the court''s order on appeal.

In any event, the court''s ruling was correct. As explained in the preceding argument, the jury found that appellant was an SVP as of the time of the verdict. Because Senate Bill 1128 was in effect at that time, the court properly committed appellant for an indeterminate term. That commitment order obviated the need for any further trials for at least one year, after which appellant will be entitled to his annual examination and may petition for release under section 6605 or 6608. No purpose would be served by having the People

24

prove the same issues in a second trial held on the heels of the first, only to have the court impose a second indeterminate term commitment.

Appellant himself is unable to offer any logical reason why the People would be required to proceed on the 2006 petition if the court was correct in imposing an indeterminate term on the 2002 and 2004 petitions. Instead, he asserts, "Had the People failed to obtain a true finding from the jury in the trial of the 2002-2004 Petitions, they clearly would not have hesitated to immediately commence a new trial on the 2006 Petition, thus granting themselves another bite of the SVP apple." (AOB 57-58.) Based on this assumption, he argues that he is entitled to a second bite as well. In truth, the People, like appellant, would be forced to accept an unfavorable verdict on the 2002 and 2004 petitions. Once a jury found that appellant was *not* currently an SVP, collateral estoppel would bar the People from trying to prove that he currently was one. (Cf. *Turner v. Superior Court* (2003) 105 Cal.App.4th 1046, 1059-1060 [where jury finds SVP petition untrue and the People file a new SVP petition against the person following a new prison term, collateral estoppel requires People to prove a change of circumstances since the time of the jury's not true finding].) Here, however, the jury found that appellant was an SVP at the time of the verdict. The court properly imposed an indeterminate term, and in light of that commitment order, properly dismissed the 2006 petition as moot.

## CONCLUSION

Accordingly, respondent respectfully requests that the judgment be affirmed.

Dated: March 11, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

LAURENCE K. SULLIVAN
Supervising Deputy Attorney General

MOONA NANDI
Deputy Attorney General

Attorneys for Respondent

MN:ng
SF2007401104
40227349.wpd

26

## CERTIFICATE OF COMPLIANCE

I certify that the attached RESPONDENT'S BRIEF uses a 13 point Times New Roman font and contains 7879 words.

Dated:  March 11, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

MOONA NANDI
Deputy Attorney General

Attorneys for Respondent

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **People v. Scott Felix**

No.:   **A115717**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service that same day in the ordinary course of business.

On <u>March 11, 2008</u>, I served the attached **RESPONDENT'S BRIEF** by placing a true copy
thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail
collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000,
San Francisco, CA 94102-7004, addressed as follows:

Janice R. Mazur
Mazur & Mazur
13465 Camino Canada, No. 106-103
El Cajon, CA 92021
(2 COPIES)

County of San Francisco
Hall of Justice
Superior Court of California
850 Bryant Street
San Francisco, CA  94103

The Honorable Kamala D. Harris
District Attorney
San Francisco County District Attorney's Office
850 Bryant Street, Room 325
San Francisco, CA  94103

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, CA  94107

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on March 11, 2008, at San Francisco,
California.

_____
Nelly Guerrero
Declarant

_____
Signature

40227718.wpd