EXHIBIT - 4

APPELLANT'S REPLY BRIEF

DATED - JUNE 2 ND, 2008

BY ATTORNEY OF RECORD
MS.- JANICE R. MAZUR

COPY

# IN THE COURT OF APPEAL FOR THE STATE OF CALIFORNIA
## FIRST APPELLATE DISTRICT
## DIVISION FIVE

PEOPLE OF THE STATE OF CALIFORNIA,     )

    Respondent,     )

v.     )

SCOTT FELIX,     )

    Appellant.     )

Court of Appeal
Case No. A115717

Court of Appeal, First Appellate District

**FILED**

JUN 2 - 2008

Diana Herbert, Clerk

Superior Court
Case No. 109100

——————— Deputy Clerk

On Appeal from the Superior Court of San Francisco
The Honorable Mary Morgan, Judge
The Honorable James J. McBride, Judge

## APPELLANT'S REPLY BRIEF

Janice R. Mazur, SBN 144611
William E. Mazur, Jr., SBN 166014
MAZUR & MAZUR
13465 Camino Canada, No. 106-103
El Cajon, CA 92021
Ph: (888) 810-5950
Fax: (888) 447-7085

Attorneys for Appellant
Scott Felix

## IN THE COURT OF APPEAL FOR THE STATE OF CALIFORNIA
## FIRST APPELLATE DISTRICT
## DIVISION FIVE

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | Court of Appeal Case No. A115717 |
| Respondent, | ) ) | |
| v. | ) ) | Superior Court |
| SCOTT FELIX, | ) ) | Case No. 109100 |
| Appellant. | ) ) ) | |

On Appeal from the Superior Court of San Francisco
The Honorable Mary Morgan, Judge
The Honorable James J. McBride, Judge

### APPELLANT'S REPLY BRIEF

Janice R. Mazur, SBN 144611
William E. Mazur, Jr., SBN 166014
MAZUR & MAZUR
13465 Camino Canada, No. 106-103
El Cajon, CA 92021
Ph: (888) 810-5950
Fax: (888) 447-7085

Attorneys for Appellant
Scott Felix

# **TOPICAL INDEX**

I.   THE TRIAL  COURT LACKED JURISDICTION TO
     EXTEND APPELLANT'S COMMITMENT AFTER
     SEPTEMBER 20, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  THE PEOPLE ARE JUDICIALLY ESTOPPED FROM
     PROCEEDING ON THE PETITIONS BY VIRTUE OF
     THEIR ENTRY INTO A CONSENT JUDGMENT
     PRECLUDING THE TYPES OF DIAGNOSIS RENDERED
     IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

III. THE PETITIONS SHOULD HAVE BEEN DISMISSED
     BECAUSE THE PEOPLE FAILED TO ALLEGE OR PROVE
     A "RECENT OVERT ACT" . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV.  THE PETITIONS MUST BE DISMISSED BECAUSE THEY
     WERE NOT SUPPORTED BY THE EVALUATIONS OF
     TWO, INDEPENDENT PSYCHOLOGISTS OR
     PSYCHIATRISTS AS REQUIRED BY SECTION 6601 . .  14

IV.  RETROACTIVE APPLICATION OF THE AMENDED
     STATUTES TO THE 2002/2004 PETITIONS VIOLATES
     APPELLANT'S DUE PROCESS RIGHTS . . . . . . . . . . . . .  17

V.   ASSUMING, ARGUENDO, THAT THE INDETERMINATE
     COMMITMENT IS VALID, THE TRIAL COURT ERRED IN
     DISMISSING THE 2006 PETITION . . . . . . . . . . . . . . . . .  19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . .  23

# TABLE OF AUTHORITIES

## California Cases

Baker v. Superior Court
(1984) 35 Cal.3d 663 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Day v. City of Fontana
(2001) 25 Cal.4th 268 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Dyna-Med v. Fair Employment & Housing Com.
(1987) 43 Cal.3d 1379. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fontana Unified School District v. Burman
(1988) 45 Cal.3d 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hubbart v. Superior Court
(1999) 19 Cal.4th 1138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Luke W.
(2001) 88 Cal.App.4th 650 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v. Avena
(1996) 13 Cal.4th 394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People v. Benson
(1998) 18 Cal.4th 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

People v. Bourquez
(2007) 156 Cal.App.4th 1275. . . . . . . . . . . . . . . . . 1, 8, 17, 20

People v. Buffington
(1994) 74 Cal.App.4th 1149 . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v. Carroll
(2007) 158 Cal.App.4th 503 . . . . . . . . . . . . . . . . . . . . . . 1, 8, 17

People v. Garcia
(1999) 21 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Hubbart
(2001) 88 Cal.App.4th 1202 . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v. Hurtado
(2002) 28 Cal.4th 1179 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Jefferson
(1992) 21 Cal.4th 86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

People v. Johnson
(2006) 38 Cal.4th 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

People v. Martin
(1980) 107 Cal.App.3d 714 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v. Palacios
(2007) 41 Cal.4th 720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

People v. Shields
(2007) 155 Cal.App.4th 559 . . . . . . . . . . . . . . . . . . . . . . 1, 8, 17

People v. Whaley
(2008) 160 Cal.App.4th 779 . . . . . . . . . . . . . . . . . . . . . . . . . 17

Santisas v. Goodin
(1998) 17 Cal.4th 599 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Turner v. Superior Court (2003) 105 Cal.App.4th 1046 . . . . . 18, 20

## **California Statutes**

Welfare & Institutions Code
    section 6600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    section 6601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## **Federal Cases**

Foucha v. Louisiana
    (1992) 504 U.S. 71,[112 S.Ct. 1780, 118 L.Ed.2d 437] . . . . .  7

Scott Felix hereby replies to the People's Respondent's Brief.

Scott Felix hereby replies to the People's Respondent's Brief.

## THE TRIAL COURT LACKED JURISDICTION TO

## EXTEND APPELLANT'S COMMITMENT

### AFTER SEPTEMBER 20, 2006

The People assert that even though the statutes amended by SB 1128 fail to make any reference to extended commitments, and even though the language in the former statutes which expressly permitted extended commitments was deleted from the amended statutes, that nevertheless, the courts should judicially insert the deleted language to effectuate the unspoken intent of the legislature. In taking this position, both the People and the courts which have adopted the People's argument, have necessarily had to disregard one of the most fundamental principles of statutory interpretation[1]:

---

[1]

Appellant's position has been considered and rejected by the Fourth Appellate District, Division One, in People v. Shields (2007) 155 Cal.App.4th 559, the Fifth Appellate District in People v. Carroll (2007) 158 Cal.App.4th 503 and the Third Appellate District in People v. Bourquez (2007) 156 Cal.App.4th 1275. The issue has not been considered by this court.

> We begin by examining the statutory
> language, giving the words their usual and
> ordinary meaning. . . . *If there is no*
> *ambiguity, then we presume the lawmakers*
> *meant what they said, and the plain*
> *meaning of the language governs*. . . . *If*,
> however, the statutory terms are ambiguous,
> *then* we may resort to extrinsic sources,
> including the ostensible objects to be
> achieved and the legislative history. . . . *In*
> *such circumstances,* we " 'select the
> construction that comports most closely
> with the apparent intent of the Legislature,
> with a view to promoting rather than
> defeating the general purpose of the statute,
> and avoid an interpretation that would lead
> to absurd consequences.' [Citation.]" . . .
> These rules apply equally in construing
> statutes enacted through the initiative
> process. . . .
> (Day v. City of Fontana (2001) 25 Cal.4th
> 268, 272 [internal citations omitted, emph.
> added].)

Thus, it is only when the plain words of the statute create

ambiguity that the courts must resort to extrinsic sources to determine

the intent of the Legislature:

> The first principle of statutory interpretation
> requires that we turn initially to the words
> of the statute to ascertain the Legislature's
> intent. *"[I]f ' "the statutory language is*
> *clear and unambiguous, there is no need*
> *for construction and courts should not*
> *indulge in it*. [Citation.] *The plain*

2

> *language of the statute establishes what*
> *was intended by the Legislature.*" '
> [Citation.]" (<u>People v. Palacios</u> (2007) 41
> Cal.4th 720, 728, citing <u>People v. Johnson</u>
> (2006) 38 Cal.4th 717, 723-724.)[2]

In this case, the plain words of the amended statutes create no

ambiguity regarding the availability of extended commitments; such

procedures simply do not exist under the amended statutes. And most

importantly, not only did the Legislature fail to provide for any

extended commitment procedures in the amended statutes, <u>it</u>

<u>affirmatively *deleted* all references to such procedures which had</u>

<u>appeared in the former statutes</u>. Although courts have, from time to

time, corrected minor, obvious drafting errors in statutes, there has

never been a case (up until now), when courts have <u>inserted</u>

provisions which have been affirmatively <u>deleted</u> by the Legislature.

---

[2]

    Ironically, although the People ignore this basic premise of
statutory construction with respect to this argument, they <u>adopt it</u> in a
different argument later in the brief. See page 13 of the Respondent's
Brief where *the People argue*: "The fundamental rule of statutory
construction is to ascertain and effectuate the intent of the
Legislature, and the most reliable indicator of legislative intent is the
words of the statute. . . . Where the words of the statute are clear and
unambiguous, there is no need for construction and courts should not
indulge in it." (Citing <u>People v. Jefferson</u> (1992) 21 Cal.4th 86, 94
and <u>People v. Benson</u> (1998) 18 Cal.4th 24, 30.)

3

If, indeed, the multiple deletions of the extended commitment

procedures from the amended statutes was error, the Legislature, not

the courts, should act to correct that error.  Indeed, this approach was

adopted by the Supreme Court in <u>Dyna-Med v. Fair Employment &</u>

<u>Housing Com.</u> (1987) 43 Cal.3d 1379.[3]

   In <u>Dyna-Med</u>, the question before the court was whether

California's Fair Employment and Housing Act ("FEHA") authorized

the Fair Employment and Housing Commission to impose punitive

damages.  The statute at issue, Government Code section 12970,

subdivision (a), sets forth the scope of relief available from the

commission and permits the agency to "take such action, <u>including,</u>

<u>but not limited to</u>, hiring, reinstatement or upgrading of employees,

with or without back pay, and restoration to membership in any

respondent labor organization, <u>as, in the judgment of the commission,</u>

<u>will effectuate the purposes of this part</u> . . .".  (<u>Id</u>, at 1385.)  The

agency argued that this statutory language was broad enough to

---

[3]      The People cite this case for the proposition that the court should
consider extrinsic evidence of the Legislature's intent where
"uncertainty" exists. (RB 5).  The People fail to acknowledge that the
"uncertainty" arises only where the plain language of the statute is
ambiguous.

4

include a right to impose punitive damages. In rejecting the
argument, the Supreme Court held that although "We take no issue
with the premise that exemplary damages would serve to deter
discrimination" and although "the phrase 'including, but not limited
to' is a phrase of enlargement,", the court found "these factors, in our
view, are insufficient to support an inference that the Legislature .
intended <u>sub silentio</u> to empower the commission to impose punitive
damages." (<u>Id</u>, at 1389.) The high court went on to note that given
the Legislative silence on the issue of punitive damages,

> If, as Commission argues, the inability to
> award such damages deprives it of an
> effective means to redress and prevent
> unlawful discrimination, ***it is for the***
> ***Legislature, rather than this court, to***
> ***remedy this defect***. (<u>Id</u>, at 1393 [emph.
> added].)

Thus, even though the Supreme Court was receptive to the
agency's argument that the intent of the Legislature was to allow
punitive damages, and the notion that such power might be consistent
with the overall goals of the statutory scheme, the court nevertheless
<u>would not, on a silent record, usurp the Legislature's power to</u>
<u>legislate</u>. Here, the situation is even more compelling. Not only are

5

the amended statutes <u>silent</u> on the issue of extended commitments, the Legislature actually <u>deleted</u> any reference to them. If these amendments do not reflect the true intent of the Legislature, then the Legislature, not the courts, should correct the problem.

The People's reliance on <u>Baker v. Superior Court</u> (1984) 35 Cal.3d 663, is also misplaced. In <u>Baker</u>, the petitioners, three mentally disordered sex offenders ("MDSOs"), argued that the court lacked jurisdiction to extend their commitments because new legislation, which repealed the former statutory scheme which had provided for extended commitments of MDSOs, had ben enacted without a savings clause. The Supreme Court rejected the argument, finding, in fact, that the Legislature's intent to retain the program as to persons already committed, was "clearly stated" in the repealing statute. Specifically, the court found that the Legislature had expressly made the repeal of the former statutory scheme <u>prospective only</u>, and had expressly indicated that the new act should not "affect any person under commitment as an MDSO . . . prior to the effective date of this act." The Legislature further declared that it was its intent to "retain persons under the commitment who committed their crimes

6

before the effective date of his enactment in order to have proper
control over these persons and to protect society .. ." (Id, p. 666-667.)

Here, unlike in Baker, the amended statutes express no intent to
retain the former recommitment procedures for those persons already
confined as SVPs. To the contrary, those provisions were expressly
deleted by the Legislature.

Moreover,

> When construing a statute in the penal context,
> courts must also be cognizant of the rule of lenity,
> which counsels construction of a penal statute "
> 'as favorably to the defendant as its language and
> the circumstances of its application may
> reasonably permit....' " (People v. Garcia (1999)
> 21 Cal.4th 1, 10.)

Here, although the SVP law is not technically a penal statute, it
has "many of the trappings of a criminal proceeding"([People v.
Hurtado (2002) 28 Cal.4th 1179] at pp. 1192, 1194 and ". . . [b]ecause
civil commitment involves a significant deprivation of liberty, a
defendant in an SVP proceeding is entitled to due process protections.
(Foucha v. Louisiana (1992) 504 U.S. 71, 80 [112 S.Ct. 1780, 1785-
1786, 118 L.Ed.2d 437].)

For the reasons set forth above and in the Opening Brief, this

7

court should respect the separation of powers doctrine (Cal. Const.,

art. III, §3) which precludes a court from engaging in anything other

than minor rewriting of drafters' errors in legislation and it should

decline to engage in the judicial activism demonstrated by its sister-

districts in <u>Shields</u>, <u>Borquez</u> and <u>Carroll</u>.

## II.

## **THE PEOPLE ARE JUDICIALLY ESTOPPED FROM**

## **PROCEEDING ON THE PETITIONS**

## **BY VIRTUE OF THEIR ENTRY INTO**

## **A CONSENT JUDGMENT PRECLUDING**

## **THE TYPES OF DIAGNOSIS RENDERED**

## **IN THIS CASE**

Subparagraph (d)(iii) of the <u>Mayberg</u> consent judgment

mandates that "NOS" diagnoses [such as that imposed on appellant

by Drs. Scherrer and Arnold as the <u>dominant</u> diagnosis in this case]

are "timely addressed (i.e. within 60 days), through clinically

appropriate assessments, and resolved in a clinically justifiable

manner." (CT 162.) If, as the People suggest, an NOS diagnosis is,

in and of it self, "clinically justified" for extended periods of time (in

8

this case, more than ten years), then there would have been no need

for the consent judgment to specify review of NOS diagnosis within

60 days.  NOS diagnoses are inherently limited and imprecise.

Although additional inquiry may sometimes resolve such imprecision,

where, as here, the imprecision is not resolved, it may very well be a

sign that the patient, despite displaying some symptoms of mental

disease, does not suffer form any disease which can actually be

identified and treated.

Clearly the intent of the consent judgment was to insure that

initial or imprecise diagnoses are not permitted to remain the primary

diagnoses for an indefinite period of time, thus relegating the patient

to diagnostic limbo.  Yet this is exactly what has occurred in this

case. The People should be precluded from relying indefinitely on

the NOS diagnosis.

9

## III.

## <u>THE PETITIONS SHOULD HAVE BEEN DISMISSED</u>

## <u>BECAUSE THE PEOPLE FAILED TO ALLEGE OR</u>

## <u>PROVE A "RECENT OVERT ACT"</u>

Subdivision (d) of section 6600 of the Welfare & Institutions Code provides that proof that a person presents a "danger to the health and safety of others" does not require proof of a recent overt act *while the offender is in custody*." The People contend that the words "while the offender is in custody" have no meaning whatsoever. The People contend that these words can be judicially stricken from the statute with no effect. The People believe, apparently, that the Legislature inserted these words because the statute wasn't long enough. The People are mistaken.

As is set forth in the Opening Brief, a fundamental principle of statutory construction is that the courts must "avoid surplusage, give effect to each portion of the statute and harmonize each part of the entire statutory scheme." (<u>Fontana Unified School District v. Burman</u> (1988) 45 Cal.3d 208, 221; <u>People v. Avena</u> (1996) 13 Cal.4th 394, 427; <u>In re Luke W.</u> (2001) 88 Cal.App.4th 650, 656.) The words

10

"while the offender is in custody" mean something. The obvious meaning, as explained in <u>People v. Martin</u> (1980) 107 Cal.App.3d 714, is that the Government should not be required to prove a recent overt act when, due to confinement, the defendant was incapable of committing a recent overt act. Conversely, however, where the defendant has been <u>out</u> of custody for a significant period of time, the Government <u>should</u> be required to prove a recent overt act; otherwise, the Government can, as here, utilize a minor infraction such as a misdemeanor drunk in public charge, to effectively lock the defendant up for years, if not forever.[4]

It is axiomatic that "[A decision] 'is not authority for everything said in the opinion but only "for the points actually involved and actually decided." (<u>Santisas v. Goodin</u> (1998) 17

---

[4]

Although the People will undoubtedly argue that the defendant is protected because he cannot be committed for an indeterminate term absent a finding that he has a current mental condition which renders him dangerous, it should be remembered that often times these defendants, such as appellant in this case, wait years to have their cases tried. In this case, the defendant was involuntarily confined for years without an adjudication that he was currently dangerous. Specifically, he was not tried on the 2002 Petition until late 2006.

Cal.4th 599, 620.) <u>Hubbart v. Superior Court</u> (1999) 19 Cal.4th 1138,

therefore, is inapplicable, since, as the People concede, "the <u>Hubbart</u>

court did not specifically address the "recent overt act" language in its

analysis of the issue of dangerousness . . . (RB p. 14.)"

     <u>People v. Hubbart</u> (2001) 88 Cal.App.4th 1202 and <u>People v.</u>

<u>Buffington</u> (1994) 74 Cal.App.4th 1149, are similarly inapplicable

because neither addressed the issue raised here: does the Government

have to prove a recent overt act where, as here, the defendant has

been out of custody for a significant period of time?

     The People argue that this court should "reject appellant's

invitation to rely on a case from a foreign jurisdiction under a foreign

and materially distinct statute when California precedent uniformly

refutes –indirectly, if not directly–appellant's argument . . ." (RB 15-

16.) The argument only serves to lend credence to appellant's

position because it concedes that <u>no</u> California precedent directly

addresses the facts of this case. Appellant does not suggest that this

court is in any way bound by out-of-state authority, but does urge this

court to consider the fact that other courts in other jurisdictions have

found appellant's argument to be meritorious.

12

The People's suggestion that the defendant's misdemeanor drunk in public conviction constitutes a "recent overt act" is frivolous. There is no suggestion in this record that this single drinking incident, after months of clean drugs tests, resulted in any sort of sexual conduct, misconduct or predatory behavior whatsoever.

The People's suggestion that the defendant's 1995 arrest for "stalking" is a recent overt act is despicable. As the People are well-aware, this complaint was <u>dismissed as unsubstantiated</u> and the defendant was <u>not</u> returned to custody as a result of it. (RT 10/6, p. 78-79, 10/11, p. 325-340.) The woman involved had assisted the defendant in preparing his resume while he was on parole. (RT 10/11, 326-327.) Several months later, the defendant fortuitously saw her on the street and waived to her from his car and called out a greeting as he was circling the block waiting for his girlfriend. (RT 10/11, 328, 335.) <u>Four or five months later,</u> he again fortuitously saw the woman on the street. He was in his car, about to turn into his bank parking lot to use the ATM machine. She was on her bicycle riding into the same bank parking lot. He said "hi" and she became hysterical, saying "stay away from me. I don't want anything to do with you."

13

(Apparently the women had been advised by Felix's parole officer that he was a "serial rapist" and she was frightened of him.). Later on that day, he was advised that the woman had reported that he was "stalking" her.) Luckily, the defendant had been followed that day by a task force assigned to monitor released sex offenders. The task force officers apparently discerned no stalking behavior and the subsequent investigation of the complaint resulted in dismissal of the charge as unsubstantiated. (RT 1-0/11, 333-334, 336) The People's willingness to prejudice the defendant with this non-incident demonstrates a blatant disregard for principles of fairness and justice.

## IV.

### THE PETITIONS MUST BE DISMISSED BECAUSE THEY WERE NOT SUPPORTED BY THE EVALUATIONS OF TWO, INDEPENDENT PSYCHOLOGISTS OR PSYCHIATRISTS AS REQUIRED BY SECTION 6601

First, the People complain that the defendant did not raise this issue below. They are mistaken. At the close of the July 17, 2006 probable cause hearing, defense counsel argued at length that despite

14

Dr. Scherrer's attempt, during cross-examination, to make a "self-righteous distinction" and the fact that he "considers himself" independent, the fact remains that Dr. Scherrer is an employee of Atascadero State Hospital, and he is not independent. Defense counsel argued that under the statute (Welf. & Inst., Code §6601), the evaluating doctors who are designated by the Department of Mental Health, must be independent of the Department of Mental Health. Thus, defense counsel argued, Dr. Scherrer does not qualify to assess the defendant under the statutory scheme. (RT 7/17/06, p. 125-126, 127.)

Defense counsel then went on to argue that Dr. Scherrer is a biased witness since, as an employee of ASH, he is paid to repeatedly evaluate the defendant and has every incentive to continue to rubber-stamp his previous evaluations rather than conduct full, new evaluations. (RT 7/17/06, 126.)

The People argue that subdivision (g) of section 6601 which expressly states that "[a]ny independent professional who is designated by the Director of Corrections or the Director of Mental Health for purposes of this section shall not be a state government

15

employee" only applies to professionals designated for the second tier evaluation required by subdivision (e) in the event that the initial two evaluators described in subdivision (d) do not concur. This interpretation flies in the fact of the language of subdivision (g), which expressly applies to "***any***" independent professional who is "***designated by the Director of Corrections*** . . . ***for purposes of this section***." The language does ***not*** limit its application to professionals designed only under subdivision (g). Rather, it expressly applies to those designed under this "section." Thus, Dr. Scherrer, who was employed solely by Atascadero State Hospital at the time of his evaluations, should have been disqualified from participating in the evaluation process.

The error was plainly prejudicial. If Dr. Scherrer's evaluation had been disqualified, then the petitions would have been deemed invalid. Moreover, if Dr. Scherrer's prejudicial and biased testimony had not been permitted at trial, the jury would have been left with two, conflicting opinions as to whether the defendant qualified as an SVP under the statute and there is a high likelihood that they would have returned a more favorable verdict.

16

**V.**

## RETROACTIVE APPLICATION OF THE

## AMENDED STATUTES TO THE 2002/2004

## PETITIONS VIOLATES APPELLANT'S

## DUE PROCESS RIGHTS

Several cases in other appellate districts have now held that the

September 2006 amendments to the SVPA apply only <u>prospectively</u>.

(See, for example, <u>People v. Shields</u>, <u>supra</u>, 155 Cal.App.4th 559,

<u>People v. Carroll</u>, <u>supra</u>, 158 Cal.App.4th 503, <u>People v. Bourquez</u>,

<u>supra</u>, 156 Cal.App.4th 1275, 1288 and <u>People v. Whaley</u> (2008) 160

Cal.App.4th 779.)  These same cases also hold, however, that since an

SVP proceeding requires a new and independent finding that the

defendant is currently an SVP, such a finding made <u>after</u> the

amendment date of the statute does not constitute retroactive

application of that amended statute.  However, <u>none</u> of these cases

present the fact scenario at issue here.

In this case, although the trial on the 2002 and 2004 petitions

was held after the effective date of the amended statutes, the

defendant had <u>already completed, prior to trial, the entirety of the</u>

17

two-year terms to which the Petitions applied. In each of the

aforementioned cases, the defendants were subjected to indeterminate

terms based on SVP findings on current petitions. In other words, the

two-year terms to which the Petitions applied had not yet expired. In

this case, in contrast, there was never a finding that the defendant was

an SVP during the two-year commitment periods alleged in the

Petitions.

In Turner v. Superior Court (2003) 105 Cal.App.4th 1046, the

Fourth Appellate District held that a jury's finding on a given SVP

petition does not collaterally estop proceedings on a subsequent

petition. The court explained that the issue in each Petition is

different because each commitment proceeding requires a new

finding as to the defendant's current mental condition:

> The likelihood of a person committing criminal
> acts because of a mental disorder is not a fixed
> condition because an individual's mental health
> and potential dangerousness can, and frequently
> does, change. (Id., p. 1058-1059.)

Here, the Petitions at issue alleged that the defendant was an

SVP who should be confined from July 2002 to July 2004 and from

July 2004 to July 2006. The defendant had completed both of these

18

terms of confinement well prior to enactment of the amended statutes

and well prior to time the Petitions were amended to seek an

indeterminate term. Accordingly, *there never was a finding that the*

*defendant was a currently dangerous SVP at any time during the*

*confinement period for either the 2002 or 2004 petitions.* It is not

logically or legally possible to find, in December 2006, that the

defendant was a <u>currently dangerous SVP</u> during these earlier time

frames. Thus, the application of the amended, indeterminate term to

the defendant in December 2006 constitutes an invalid, retroactive

application of the amended statutes.

## VI.

## ASSUMING, ARGUENDO, THAT THE

## INDETERMINATE COMMITMENT IS VALID,

## THE TRIAL COURT ERRED IN

## DISMISSING THE 2006 PETITION

The People argue that the court's dismissal of the 2006 petition

after imposition of the indeterminate term on the 2002 and 2004

petitions is not appealable because it is not a judgment adverse to the

defendant, nor is it a judgment that affects his substantial rights.

19

Nonsense. Dismissal of the pending 2006 petition deprived the

defendant of the right to prove to a jury that he was not an SVP at the

time of trial on the 2006 petition. Had the 2006 Petition gone

forward, the People would have had the burden to prove that the

defendant was an SVP at the time of trial on that Petition. Dismissal

of the 2006 Petition means that the defendant will remain in custody

on the indeterminate term imposed on the 2002 and 2004 petitions

until such time as he can prove (with the burden on him), that he is

not an SVP. (See Borquez v. Superior Court, supra, 156 Cal.App.4th

at 1288, fn. 3 and 1289, fn. 4.) Thus, dismissal of the 2006 Petition

was clearly adverse to the defendant and clearly affected his

substantial rights.

The People's reliance on Turner v. Superior Court, supra, 105

Cal.App.4th 1046 is misplaced because Turner supports appellant's

position. As is noted above, Turner holds that a jury's finding on a

given SVP petition does not collaterally estop proceedings on a

subsequent petition because the issue in each is different. Since each

commitment proceeding requires a new finding as to the defendant's

current mental condition, and that mental condition is subject to

frequent change, the issue in each proceeding is different.(Id., p. 1058-1059.)

Moreover, the People's contention that "no purpose would be served by having the People prove the same issue in a second trial held on the heels of the first" (RB 24-25) is disingenuous at best given the fact that it took more than four years to try to the 2002 petition and over two years to try the 2004 petition. Had the 2006 petition proceeded, it is hardly a given that the trial would have proceeded "on the heels" of the previous trial.

Accordingly, the trial court erred in dismissing the 2006 petition based on the indeterminate term imposed in the 2002 and 2004 petitions.

21

## CONCLUSION

For all the foregoing reasons, the true finding on the 2002/2004

Petitions should be reversed. If the true finding as to the 2002/2004

Petitions are not reversed, then the matter should be remanded for a

trial on the 2006 Petition.

Respectfully submitted,

DATED: 5/30/08

MAZUR & MAZUR
Janice R. Mazur
William E. Mazur, Jr.
By:_____
    Janice R. Mazur,
    Attorneys for appellant
    Scott Felix

22

## **CERTIFICATE OF WORD COUNT**

The undersigned certifies that this Brief contains 3951 words,

as counted by the WordPerfect word processing program used to

generate this brief.

DATED: 5/30/08

JANICE R. MAZUR, attorney
for appellant

23

## AFFIDAVIT OF SERVICE BY MAIL

I am employed in the State of California, County of San Diego. I am over the age of eighteen and not a party to this action. My business address is 13465 Camino Canada, No. 106, El Cajon, CA 92021.

On May 30, 2008, I mailed documents described as **APPELLANT'S REPLY BRIEF** via the United States mail in Whitefish, Montana in postage prepaid envelopes to interested parties in this action addressed as following:

See Attached Service List

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on May 30, 2008.

JANICE R. MAZUR

Service List, People v. Felix, Case No. A115717

Office of the Attorney General
455 Golden Gate Ave.
#11000
San Francisco, CA 94102

San Francisco Superior Court
850 Bryant St.
San Francisco, CA 94103
Attn: Judge Morgan

San Francisco Superior Court
850 Bryant St.
San Francisco, CA 94103
Attn: Judge McBride

Scott Felix (Appellant)

California Supreme Court
350 McAllister St.
San Francisco, CA 94102

District Attorney
850 Bryant St., Room 322
San Francisco, CA 94103

Kenneth Quigley (Trial Counsel)
650 Fifth St., Suite 502
San Francisco, CA 94107