# EXHIBIT - 7

## PETITION FOR REVIEW
## SUPREME COURT
## THE STATE OF CALIFORNIA

## DATED JAN 27TH 2009

## BY ATTORNEY OF RECORD
## Ms. JANICE R. MAZUR

**S170045**

Case No. _____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF )   Court of Appeal   **SUPREME COURT**
CALIFORNIA,                        )   Case No. A115717   **FILED**
                                           )
    Respondent/respondent,   )   JAN **2 7** 2009
                                           )
v.                                        )   Frederick K. Ohlrich Clerk
                                           )
                                           )   Superior Court
SCOTT FELIX,                      )   Case No. 109100   Deputy
                                           )
    Appellant/Petitioner.       )
                                           )
_____ )

On Petition for Review from a Decision of the
First Appellate District, Division Five

---

### PETITION FOR REVIEW

---

Janice R. Mazur, SBN 144611
William E. Mazur, Jr., SBN 166014
MAZUR & MAZUR
13465 Camino Canada, No. 106-103
El Cajon, CA 92021
Ph: (888) 810-5950
Fax: (888) 447-7085

Attorneys for Appellant/Petitioner
Scott Felix

Case No. _____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | Court of Appeal Case No. A115717 |
| Respondent/respondent, | ) ) ) | |
| v. | ) ) | Superior Court |
| SCOTT FELIX, | ) ) | Case No. 109100 |
| Appellant/Petitioner. | ) ) ) ) | |

On Petition for Review from a Decision of the
First Appellate District, Division Five

## PETITION FOR REVIEW

Janice R. Mazur, SBN 144611
William E. Mazur, Jr., SBN 166014
MAZUR & MAZUR
13465 Camino Canada, No. 106-103
El Cajon, CA 92021
Ph: (888) 810-5950
Fax: (888) 447-7085

Attorneys for Appellant/Petitioner
Scott Felix

# **TOPICAL INDEX**

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

WHY REVIEW SHOULD BE GRANTED . . . . . . . . . . . . . . . . . .  2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

A RESPONDENT IN AN SVP PROCEEDING IS ENTITLED TO
DUE PROCESS PROTECTIONS . . . . . . . . . . . . . . . . . . . . . . . . .  10

I.    THE COURT OF APPEAL ERRED AND DEPRIVED THE
      APPELLANT OF HIS CONSTITUTIONAL RIGHT TO DUE
      PROCESS, WHEN IT AFFIRMED THE TRIAL COURT'S
      JURISDICTION TO EXTEND HIS COMMITMENT AFTER
      SEPTEMBER 20, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      A.    SB 1128 repealed the re-commitment provisions of the
            former law and the courts are thus without statutory
            authority to apply the new law to persons already
            committed under the old law . . . . . . . . . . . . . . . . . .  11

      B.    The courts are without authority to re-write the amended
            statute to comport with the presumed Legislative
            intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

II.   THE COURT OF APPEAL ERRED AND DEPRIVED THE
      APPELLANT OF HIS CONSTITUTIONAL RIGHT TO DUE
      PROCESS WHEN IT AFFIRMED THE RETROACTIVE SVP
      FINDING AND APPLICATION OF AN INDETERMINATE
      TERM LONG AFTER EXPIRATION OF THE TWO-YEAR
      COMMITMENT TERMS AT ISSUE IN THE PETITIONS
      AND AFTER THE 2006 PETITION HAD BEEN
      DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

III.   THE COURT OF APPEAL ERRED IN VIOLATION OF THE
       APPELLANT'S DUE PROCESS RIGHTS, IN AFFIRMING
       THE TRUE FINDINGS ABSENT ALLEGATIONS OR
       PROOF OF A "RECENT OVERT ACT" . . . . . . . . . . . . . . .  29

       A.   Principles of statutory construction compel a finding that
            it is necessary to allege and prove a recent overt act
            when the SVP candidate has been out of custody for an
            extended period of time  . . . . . . . . . . . . . . . . . . . . . . .  32

       B.   Due process requires a finding that the appellant must
            have committed a 'recent overt act' if the petition is
            initiated after he has been out of custody following his
            last sexual violation  . . . . . . . . . . . . . . . . . . . . . . . . . .  34

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

CERTIFICATE OF WORD COUNT  . . . . . . . . . . . . . . . . . . . . . .  40

# TABLE OF AUTHORITIES

## California Cases

Fontana Unified School District v. Burman
    (1988) 45 Cal.3d 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Great Lakes Properties, Inc. v. City of El Segundo
    (1977) 19 Cal.3d 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Halbert's Lumber, Inc. v. Lucky Stores, Inc.
    (1992) 6 Cal.App.4th 1233 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hubbart v. Superior Court
    (1999) 19 Cal.4th 1138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In Re Lawrence
    (2008) 44 Cal.4th 1181 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

In re Luke W.
    (2001) 88 Cal.App.4th 650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Jurcoane v. Superior Court
    (2001) 93 Cal. App. 4th 886 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

People v. Avena
    (1996) 13 Cal.4th 394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

People v. Bourquez
    (2007) 156 Cal.App.4th 1275. . . . . . . . . . . . . . . . . . . . . . 15, 17

People v. Campbell
    (1902) 138 Cal. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

People v. Carroll
  (2007) 158 Cal.App.4th 503 . . . . . . . . . . . . . . . . . . .  15, 17, 24

People v. Garcia
  (1999) 21 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 19

People v. Guzman
  (2005) 35 Cal.4th 577 . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 19

People v. Hurtado
  (2002) 28 Cal.4th 1179 . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11

People v. Johnson
  (2006) 38 Cal.4th 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

People v. Litmon
  (2008) 162 Cal.App.4th 383 . . . . . . . . . . . . . . . . . . . . . . .  25, 27

People v. Martin
  (1980) 107 Cal.App.3d 714 . . . . . . . . . . . . . . . . . . .  29, 30, 35

People v. Otto
  (2001) 26 Cal.4th 200 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

People v. Palacios
  (2007) 41 Cal.4th 720 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

People v. Pieters
  (1991) 52 Cal.3d 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

People v. Robles
  (2000) 23 Cal.4th 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

People v. Shields
  (2007) 155 Cal.App.4th 559 . . . . . . . . . . . . . . . . . . . . . . . .  15

People v. Whaley
(2008) 160 Cal.App.4th 779 . . . . . . . . . . . . . . . . . . . . . . . . .  24

Ross v. City of Long Beach
(1944) 24 Cal.2d 258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Security Pacific National Bank v. Wozab
(1990) 51 Cal.3d 991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Turner v. Superior Court
(2003) 105 Cal.App.4th 1046 . . . . . . . . . . . . . . . . . . . . . . . .  25

## California Statutes

Welfare & Institutions Code
section 6600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 11, 30, 33

section 6601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 29

section 6601.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

section 6604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8, 12, 23

section 6604.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 13, 23

section 6605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 14

## Federal Cases

Chapman v. California
     (1967) 386 U.S. 18, [87 S.Ct. 824, 17 L.Ed.2d 705]  . . . . . .  10

Foucha v. Louisiana
     (1992) 504 U.S. 71,[112 S.Ct. 1780, 118 L.Ed.2d 437] . . . .  10

Kansas v. Crane
     (2002) 534 U.S. 407, 122 S.Ct. 867  . . . . . . . . . . . . . . . . . .  37

Lynch v. Baxley
     (M.D. Ala. 1974) 386 F.Supp. 378 . . . . . . . . . . . . . . . . . . . . .  38

Marbury v. Madison
     (1803) 5 U.S. (1 Cranch) 137, [2 L.Ed. 60, 73]. . . . . . . . . . .  18

United States v. Monsanto
     (1989) 491 U.S. 600, 109 S.Ct. 2657  . . . . . . . . . . . . . . . . . .  33

United States v. Naftalin
     (1979) 441 U.S. 768, 99 S.Ct. 2077  . . . . . . . . . . . . . . . . . .  33

## Other State Cases

In re Gonzalez
     (Iowa Sup. Ct. 2003) 658 N.W.2d 102 . . . . . . . . . . .  35, 37, 38

In re Harris
     (1982) 98 Wn.2d 276, 654 P.2d 109 . . . . . . . . . . . . . . . . . . .  35

In re Young
     (Wash., 1993) 122 Wn.2d 1, 857 P.2d 989 . . . . . . . . . . . . .  34

## **California Rules of Court**

Rule 8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 2

## **United States Constitution**

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Appellant Scott Felix hereby petitions for review of the partially-published decision of the Court of Appeal, First Appellate District, Division Five, issued on December 16, 2008.[1] Copies of the Court of Appeal's December 16, 2008 decision, its January 6, 2009 Order Modifying Opinion (No Change in Judgment), and it's January 6, 2009 order Certifying for Publication Part III, are attached as an Appendix hereto. This petition is brought on the ground that review is necessary to secure uniformity of decision and/or to settle important questions of law. (California Rules of Court, rule 8.500, sub. (b).)

## ISSUES PRESENTED

1. Did the appellate court err, in violation of appellants' right to due process and in violation of the separation of powers doctrine, in re-writing Welfare and Institutions Code sections 6601, et seq. to re-insert language which had been <u>deleted</u> by the Legislature when it amended the statutes?

---

[1]

The decision was initially ordered published as to Part IV only, related to "Proof of Recent Overt Acts". (Slip Opin., pp. 19-23.) Thereafter, on January 6, 2009, the appellate court granted the Attorney General's request to also publish Part III, which deals with estoppel by a consent judgment in <u>Mayberg (United States v. California</u> (C.D. Cal.) CV-06-2667-GPS.)

2.    Did the appellate court err, in violation of appellant's right to due process, when it affirmed a true SVP finding and imposition of an indeterminate term entered long-after expiration of the commitment terms at issue, and after dismissal of the only Petition for which the commitment term had not expired?

3.  Did the appellate court err, in violation of appellant's right to due process, when it affirmed the true finding absent allegations or proof of a "recent overt act"?

## **WHY REVIEW SHOULD BE GRANTED**

Review should be granted to secure uniformity of decision and/or to settle an important question of law. (California Rules of Court, rule 8.500, sub. (b).)  As will be shown, review is necessary to settle important questions of first impression in California law which impact the appellant's, and others' most fundamental due process rights.

2

## INTRODUCTION

This is an appeal from a indeterminate term commitment under Welfare & Institutions Code section 6600, et seq.

In 1982, at the age of 21, appellant committed a series of sex crimes. He pled guilty to several charges and was convicted in 1982. After serving years in prison, he was paroled in 1993 and released into the community where he remained, sex-crime free, for more than two years. In 1996 he was arrested on a misdemeanor drunk-in-public charge which resulted in a revocation of his parole. Although no new sex crime had been committed, the state initiated a Petition for Commitment under the Sexually Violent Predators Act ("SVPA"). The 1996 Petition was found true and the appellant was committed to the Department of Mental Health for a two-year term. Over the next few years, several Petitions to extend the commitment were filed. As of late 2006, Petitions to extend his commitment which had been filed in 2002, 2004 and 2006 had "stacked up" and appellant remained in Atascadero State Hospital although there had been no valid judgment that he was an SVP for at least six years. Finally, in October 2006, he was tried on two-year commitment extension Petitions filed in 2002

3

and 2004 and true findings were returned. Meanwhile, the Legislature amended the SVPA to provide for indeterminate terms of confinement. Because the petitioner was committed for an indeterminate term on the 2002 and 2004 Petitions, the 2006 Petition was dismissed without trial as moot.

Appellant, who has not committed a sex crime for 25 years, despite having completed his sentence for his crimes in 1993, and despite having been free in the community for almost two years with no new sex offenses, has been confined for the past twelve years, at least half of them without a current valid finding that he is an SVP. He is now confined for an indeterminate term.

The proceedings and the confinement violate the spirit and the letter of the statutory scheme and are unconstitutional on many levels. For the reasons set forth below, the appellant is entitled to immediate release and review should be granted to secure uniformity of decision and to settle the important issues raised herein.

4

## STATEMENT OF THE CASE[2]

In 1982, when he was 21 years old, the appellant, Scott Felix,

pled guilty to several sexual offenses. (CT 5E, RT 10/10, p. 204, RT

10/11, pp. 319-320). After serving eleven years in prison, he was

paroled in December 1993. (RT 10/13, p. 323). After his release, he

was out of custody on parole for periods totaling approximately 20

months. (CT 18-19). During that time, he did not commit any sexual

offenses. (RT 10/10, p. 206, CT 18-20).[3] For most of that period, he

was subject to frequent testing for drug and alcohol use, with no

violations. (RT 10/10, p. 223.) However, in March of 1996, the

---

[2]

"CT" refers to the two-volume Clerk's Transcript, including
pages 1-124, which is the sealed Petition for Extended Commitment
(and attachments thereto), filed by the People on July 11, 2006. "RT"
refers to the multi-volume Reporter's Transcripts, which will be
identified by date.

[3]

During this time period, the respondent was arrested for an
assault and possession of stolen property, but the charges were
dismissed for lack of evidence. (RT 10/11, p. 323-324.) Thereafter,
his parole was revoked based on an alleged stalking complaint by a
female parole officer who knew his past history and was frightened
when she fortuitously ran into him several times. Although his parole
was initially revoked based on the allegation, after investigation, the
allegation was dismissed as unsubstantiated. He was not returned to
custody as a result. (RT 10/6, pp. 78-79, 10/11, pp. 325-340.)

5

appellant was arrested on a misdemeanor drunk in public charge and

his parole was revoked for violation of an alcohol-abstention

condition. (RT 10/6, p. 79, RT 10/11, p. 343.)

Upon completion of the respondent's parole revocation term

following the drunk in public charge, the People initiated involuntary

commitment proceedings pursuant to Welfare & Institutions Code

section 6604. At the time, the law provided for extended

commitments of two years. (CT 1-4.)

Between 1996 and 2002, the respondent had several trials, at

least one of which resulted in a finding that he was an SVP and he

was committed to the custody of the DMH.[4] (RT 7/17/06, p. 3.)

In 2002 the People filed a Petition for Extended Commitment

for the time period of July 23, 2002 through July 22, 2004. ("the 2002

---

4

The current appellate record is not entirely clear as to the
details of the proceedings between 1996 and 2002. It appears that the
initial 1996 commitment petition was found to be true. Thereafter,
petitions to continue the commitment were apparently filed every two
years. At one point the appellant was found to be an SVP in a
combined proceeding under §§ 6604 and 6605 (a motion for early
release), but that verdict was set aside by stipulation of the parties.
(RT 9/15, p. 14, RT 9/19/06, p.4-5, RT 9/29/06, p. 10.) In any event,
it is undisputed that the appellant has remained confined in the
custody since 1996. (CT 256, RT 10/11, p. 344.)

6

Petition"). In 2004, although the 2002 petition had not yet been tried, the People filed another Petition for Extended Commitment for the time period July 23, 2004 through July 22, 2006. ("the 2004 Petition") (RT 7/17, p. 16.) The 2002 and 2004 Petitions were apparently consolidated in September 2004. (CT 309.) On July 11, 2006, although neither the 2002 nor the 2004 petition had been tried, the People filed another Petition for Extended Commitment for the time period July 23, 2006 through July 22, 2008. ("the 2006 Petition") (CT 1-124.)[5]

Finally, in 2006, after the appellant had spent ten years in the custody of the DMH, all three pending Petitions (2002, 2004 and 2006), were set for trial. The 2002 and 2004 Petitions were assigned to the Honorable Mary Morgan. The 2006 Petition was to trail the first trial, and was assigned to the Honorable James J. McBride. (RT 9/29, p. 13, RT 10/20, pp. 687-688.)

---

[5]

The sealed 2002 and 2004 Petitions have not been included in the appellate record. However, the parties agree that all three petitions are virtually identical (RT 10/3, pp. 13-14, CT 307.)

7

Meanwhile, on September 20, 2006, the California Legislature passed urgency legislation known as Senate Bill 1128 which amended Penal Code sections 6604 and 6604.1 and several other provisions of the SVPA. The amended statutes provide for commitment for an indeterminate term, rather than a two-year term, upon a finding that the respondent is a sexually violent predator.

Just after the effective date of SB 1128, on September 27, 2006, the People moved to amend all three pending Petitions to assert an indeterminate term of commitment rather than a two-year term of commitment. (CT 321-332)[6] Judge Morgan granted the motion to amend with the proviso that it was, at that point in time, unclear whether the amendment of the statute would apply to the Petitions which had been pending prior to the effective date of the amendment. She indicated that if the Petitions were found true, the question of the term of commitment could be litigated later. (RT 10/3, pp. 15-16.)

---

[6]

Although the written motion was directed to Judge McBride, Judge Morgan addressed the motion with respect to the 2002 and 2004 Petitions. (RT 10/3, p. 13.) It appears that Judge McBride never did make a ruling with respect to the 2006 Petition because it was ultimately dismissed. (RT 10/23, p. 5, CT 410.)

8

The 2002 and 2004 Petitions came on for trial before Judge Morgan in October 2006. On October 18, 2006, the jury returned a true finding on the allegations. (CT 404, 406, RT 10/18, pp. 673-675.)

The commitment hearing was held on October 20, 2006. At that hearing the People argued that the indeterminate commitment provision of the new law applied to the 2002 and 2004 Petitions. The defense argued that an indeterminate commitment would constitute a violation of the due process and ex post facto clauses of the federal Constitution. The court agreed with the People and ordered appellant committed to the DMH for an indeterminate term. (RT 10/20, pp. 682-686.)

On October 23, 2006, on motion by the People, and over defense objection, Judge McBride dismissed the 2006 Petition in light of the indeterminate term imposed on the 2002 and 2004 Petitions. (RT 10/23, pp. 2-5.)

On October 26, 2006, appellant timely filed a Notice of Appeal from both the Judgment on the 2002-2004 Petitions, and as to the dismissal of the 2006 Petition. (CT 411-412.)

9

## A RESPONDENT IN AN SVP PROCEEDING

## IS ENTITLED TO DUE PROCESS PROTECTIONS

The Fifth Amendment of the United States Constitution, as

applicable to the states via the Fourteenth Amendment, provides that

no person "shall be deprived of life, liberty or property without due

process of law."

> Although the SVPA is a civil proceeding, its
> procedures have many of the trappings of a
> criminal proceeding"; "[a]n SVPA
> commitment unquestionably involves a
> deprivation of liberty, and a lasting
> stigma,...."([People v. Hurtado (2002) 28
> Cal.4th 1179] at pp. 1192, 1194; see also
> People v. Otto (2001) 26 Cal.4th 200, 209.)

The United States Supreme Court agrees:

> . . . [b]ecause civil commitment involves a
> significant deprivation of liberty, *a
> defendant in an SVP proceeding is entitled
> to due process protections*. (Foucha v.
> Louisiana (1992) 504 U.S. 71, 80 [112 S.Ct.
> 1780, 1785-1786, 118 L.Ed.2d 437]. [emph.
> added].)

The test set forth in Chapman v. California (1967) 386 U.S. 18,

87 S.Ct. 824, 17 L.Ed.2d 705 governs review of constitutional error

in SVPA cases: Federal constitutional error is reversible unless shown

10

to be harmless beyond a reasonable doubt. (Hurtado, supra, 28

Cal.4th at p. 1194.)

## I.

## THE COURT OF APPEAL ERRED AND DEPRIVED THE

## APPELLANT OF HIS CONSTITUTIONAL RIGHT TO

## DUE PROCESS, WHEN IT AFFIRMED THE TRIAL

## COURT'S JURISDICTION TO EXTEND

## HIS COMMITMENT AFTER SEPTEMBER 20, 2006

**A.**   **SB 1128 repealed the re-commitment provisions of the
former law and the courts are thus without statutory
authority to apply the new law to persons already
committed under the old law**

On September 20, 2006, Senate Bill 1128 (SB 1128), the "Sex

Offender Punishment, Control, and Containment Act of 2006", was

signed by the Governor and chaptered by the Secretary of State. It

became immediately effective as urgency legislation. Five of its

sixty-two sections amended various sections of the Sexually Violent

Predator Act (SVPA or the Act), codified as Welfare and Institutions

Code section 6600, et seq. The primary effect of the amendments to

the SVPA was to change the term of commitments under the Act from

11

a two-year term to an indeterminate term. However, the amendments

also deleted the only statutory language that authorized extended

commitments of persons, like the appellant, who had been previously

committed under the SVPA for a two-year term and whose term had

thereafter expired prior to the enactment of SB 1128.

From its inception in 1996 until amendment by SB 1128 over

ten years later, the SVPA provided for two-year commitments which

could be extended every two years upon the filing of a new petition

and an extended commitment being obtained from the court. (§ 6604;

Hubbart v. Superior Court , supra, 19 Cal.4th at 1147.)

The *only* language in the Act authorizing extended commitment

proceedings was contained in section 6604 and referenced by section

6604.1, both of which were amended by SB 1128. Both sections are

reproduced here with strike-out type showing the language deleted by

SB 1128 and underscored type showing language added by SB 1128.

Section 6604
> The court or jury shall determine whether,
> beyond a reasonable doubt, the person is a
> sexually violent predator. If the court or jury
> is not satisfied beyond a reasonable doubt
> that the person is a sexually violent
> predator, the court shall direct that the

12

person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for ~~two years~~ an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, ~~and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605~~. Time spent on conditional release shall not count toward the term of commitment, unless the person is placed in a locked facility by the conditional release program, in which case the time in a locked facility shall count toward the term of commitment. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections and Rehabilitation.

Section 6604.1

(a) The ~~two year~~ indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. ~~The initial two-~~

13

~~year term shall not be reduced by any time~~
~~spent in a secure facility prior to the order of~~
~~commitment. For any subsequent extended~~
~~commitments, the term of commitment shall~~
~~be for two years commencing from the date~~
~~of the termination of the previous~~
~~commitment.~~
(b) The person shall be evaluated by two
practicing psychologists or psychiatrists, or
by one practicing psychologist and one
practicing psychiatrist, designated by the
State Department of Mental Health. The
provisions of subdivisions (c) to (i),
inclusive, of Section 6601 shall apply to
evaluations performed ~~for purposes of~~
~~extended commitments~~ <u>pursuant to a trial</u>
<u>conducted pursuant to subdivision (f) of</u>
<u>Section 6605</u>. The rights, requirements, and
procedures set forth in Section 6603 shall
apply to ~~extended~~ <u>all</u> commitment
proceedings.

As can be seen, the language of both statutes was amended to

<u>delete all reference to extended commitment proceedings</u>.  And the

amendments contain no savings clause pertaining to individuals like

appellant, who were previously committed under the Act and whose

commitments had expired prior to the enactment of SB 1128.  The

only provision for commitment under the newly amended SVPA

requires that the person to be committed be "in custody [of the

Department of Corrections and Rehabilitation] pursuant to [a]

14

determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed." (§ 6601, subd. (a)(2).) In other words, the only type of commitment which exists as of September 20, 2006 is an initial commitment.

## B. The courts are without authority to re-write the amended statute to comport with the presumed Legislative intent

Several previous Court of Appeal cases have rejected the argument that the amendment to the SVPA effectively repealed any provision for extended commitments of persons already confined. People v. Shields (2007) 155 Cal.App.4th 559, People v. Carroll (2007) 158 Cal.App.4th 1149 and People v. Bourquez (2007) 156 Cal.App.4th 1275, did not dispute that the relevant language had been omitted from the amended version of the statute, but found, nevertheless, that the "obvious intent" of the Legislature was to "enhance–not restrict" confinement of persons found to be SVP's. Based on this analysis, the Shields, Carroll and Bourquez courts held that "language of a statute should not be given a literal meaning if doing so would result in absurd consequence which the Legislature did not intend" (citing People v. Pieters (1991) 52 Cal.3d 894, 898-

15

899). Utilizing theories of "drafters error" or an "implied savings

clause", these cases held that the provisions of amended section 6604

apply to those persons confined for two-year terms under the former

version of the statute even though no such language exists in the

amended statutes.

Appellant argued below that these courts have engaged in an

unconstitutional re-writing of the statutes in violation of the

separation of powers doctrine (Cal. Const., art. III, § 3). That

doctrine, as interpreted by this court, has previously limited courts to

relatively minor rewriting of statutes to correct drafters' error and,

even then, only when it has been obvious that *a word* or *a number*

had been erroneously used or omitted. (People v. Guzman (2005) 35

Cal.4th 577, 587; quoting People v. Garcia (1999) 21 Cal.4th 1, 14.)

The United States Supreme Court also forbids judicial re-

drafting of statutes:

> If Congress enacted into law something
> different from what it intended, then it
> should amend the statute to conform it to its
> intent. "It is beyond our province to rescue
> Congress from its drafting errors, and to
> provide for what we might think ... is the
> preferred result." [citation omitted]. This

16

> allows both of our branches to adhere to our respected, and respective, constitutional roles. (Lamie v. U.S. Trustee 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024. [emph. added].)

In Shields, Carroll and Bourquez, however, the Courts of Appeal added back into the SVPA an entire jurisdictional provision which the Legislature had just removed. This was an unprecedented expansion of the use of "that drastic tool of construction" (Id.), one which transgressed the boundaries between the legislative and judicial functions.

Appellant argued below that where the literal language of the amended statute is unambiguous, the courts are precluded from "construing" the statute other than according to its plain language. (People v. Palacios (2007) 41 Cal.4th 720, 728, citing People v. Johnson (2006) 38 Cal.4th 717, 723-724.) The SVPA, as amended by SB 1128, is a perfectly unambiguous and functional act, but one that fails to acknowledge the existence of those persons then under two-year commitments or to make any provision for their extended commitment upon the expiration of their two-year commitments. He argued that the appellate courts' "correction" of the Legislature's

17

"error" by re-inserting statutory provisions which had been underline{deleted} by the Legislature sacrifices the systemic integrity provided by the constitutional separation of governmental powers in order to accomplish the immediate goal of continuing to keep several hundred supposedly dangerous individuals segregated from society. The danger from any of the three branches of government overreaching the bounds of their constitutional authority far outweighs the danger posed by a few hundred individuals. This is especially true where the appropriate branch of government, the Legislature, has the power to correct its own mistakes.

> To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction, between a government with limited and unlimited powers, is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. (Marbury v. Madison *(*1803) 5 U.S. (1 Cranch) 137, 176-177 [2 L.Ed. 60, 73].)

The Supreme Court has established the bounds imposed on

California courts by the separation of powers doctrine in correcting

18

"drafters' error" contained in legislation.

> It is true, of course, that we occasionally
> have used the concept of drafters' error in
> applying statutes. However, we "do[] not
> lightly assume drafting error ... ." (People
> v. Robles (2000) 23 Cal.4th 1106, 1114 . . .)
> "Consistent with the separation of powers
> doctrine (Cal. Const., art. III, § 3), we have
> previously limited ourselves to relatively
> minor rewriting of statutes and, even then,
> only resorted to that drastic tool of
> construction when it has been obvious that a
> word or number had been erroneously used
> or omitted. [Citations.]" (People v. Garcia
> (1999) 21 Cal.4th 1, 14 . . . [Footnote.]
> Although we may partially rewrite a statute
> "when compelled by necessity and
> supported by firm evidence of the drafters'
> true intent [citation], we should not do so
> when the statute is reasonably susceptible to
> an interpretation that harmonizes all its parts
> without disregarding or altering any of
> them." (Id., at p. 6.)  We follow this
> restrained approach to conform to the
> "necessary limitations on our proper role in
> statutory interpretation." (Id., at p. 14.)

(Guzman, supra, 35 Cal.4th at p. 587.)

In Garcia, supra, 21 Cal.4th 1, this court noted that no case

could be found "in which this court has cured an asserted drafting

error by grafting an entire substantive clause onto a statute." (Id. at p.

14.)  Yet that is exactly what the cases which have considered this

19

language did. More troublesome yet, the clauses the court grafted

back onto the statutes were <u>the very ones the Legislature had just</u>

<u>excised</u>.

> "Courts have no power to rewrite a statute
> by inserting what the Legislature has
> omitted. 'It is axiomatic that in the
> interpretation of a statute where the
> language is clear, its plain meaning should
> be followed.' (<u>Great Lakes Properties, Inc.</u>
> <u>v. City of El Segundo</u> [(1977)] 19 Cal.3d
> 152, 155.)" (<u>Security Pacific National Bank</u>
> <u>v. Wozab</u> (1990) 51 Cal.3d 991, 998.)

For a court to insert into a statute language specifically

removed by the Legislature violates the cardinal rule of statutory

construction that courts must not add provisions to statutes. (<u>Ibid.</u>;

<u>People v. Campbell</u> (1902) 138 Cal. 11, 15; <u>Ross v. City of Long</u>

<u>Beach</u> (1944) 24 Cal.2d 258, 260.) "This rule has been codified in

California as [Code of Civil Procedure] section 1858, which provides

that a court must not 'insert what has been omitted' from a statute."

(<u>Security Pacific National Bank v. Wozab, supra,</u> 51 Cal.3d at p.

998.)

Faced with this authority, the Court of Appeal in the instant

case took a different tact from its sister courts; it declined to apply the

20

drafter's error/implied savings clause theory to re-write the statute (Slip Opin., pp. 11, fn. 6), but rather, found that the statute, as amended, is <u>ambiguous</u> about whether a petition for an indeterminate commitment can be filed against a person already committed to the custody of the DMH as an SVP. (Slip Opin., pp. 9-12). (This despite the court's own admission that "<u>If read in isolation, the subdivision could be understood to limit the class of persons subject to petitions for SVP commitment to persons in the custody of [the] Department of Corrections</u>." (Slip Opin ., p. 9.) Therefore, the court concluded, because the statute is "ambiguous", it can look to "other indicia of Legislative intent to resolve the ambiguities in the statute." (Slip Opin., p. 10-11.)

But as is noted above, the SVPA, as amended by SB 1128, is, on its face, a perfectly unambiguous and functional act, and one that fails to acknowledge the existence of those persons then under two-year commitments or to make any provision for their extended commitment upon the expiration of their two-year commitments. Its language, therefore, controls application of the statute, and there is nothing to "interpret" or "construe." <u>(Halbert's Lumber, Inc. v. Lucky</u>

21

Stores, Inc. (1992) 6 Cal.App.4th 1233, 1238-1239.) It is presumed the Legislature intended everything in a statutory scheme, and courts should not read statutes to omit expressed language or to include omitted language. (Jurcoane v. Superior Court (2001) 93 Cal. App. 4th 886, 894.) Moreover, the appellate court's comment in this case that "Felix has not produced any legislative history" is wrong. Felix cited, there as here, the text of SB 1128, affirmatively proving that the Legislature **deleted** every reference to extended commitments which appeared in the prior statute. If this isn't legislative history, it's hard to imagine what is.

In short, all of the appellate courts which have considered this issue have tip-toed around the plain truth: the Legislature deleted all references to extended commitments in the amended statute. The courts do not have the power to re-write statutes to re-insert provisions which the Legislature has removed. This court should grant review to determine whether the appellate courts have exceeded their constitutional authority in re-writing the statutes, and whether the superior court was without jurisdiction to conduct an extended commitment proceeding or to issue an extended commitment order.

22

## II.

## **THE COURT OF APPEAL ERRED AND DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT AFFIRMED THE RETROACTIVE SVP FINDING AND APPLICATION OF AN INDETERMINATE TERM LONG AFTER EXPIRATION OF THE TWO-YEAR COMMITMENT TERMS AT ISSUE IN THE PETITIONS AND AFTER THE 2006 PETITION HAD BEEN DISMISSED**

As noted above, the appellant was not tried on the 2002 and 2004 Petitions until October 2006. By the time these Petitions were tried, the appellant had already completed the two-year commitment terms applicable to both of these Petitions. Indeed, the commitment term for the latter 2004 Petition expired on July 22, 2006, months before the trial, and months before the indeterminate term amendment to sections 6604 and 6604.1. Nevertheless, after the trial, the court applied the amended statute, which did not even exist at the time the relevant Petitions were filed or at any time during the commitment term sought by those Petitions, to impose upon the appellant an

23

indeterminate commitment to the DMH.

Citing Carroll, supra, 158 Cal.App.4th at 512-513, Bourquez, supra, 156 Cal.App.4th at 1289 and People v. Whaley (2008) 160 Cal.App.4th 779, 799, the Court of Appeal held that the application of the indeterminate term to Felix does not constitute retroactive application of the statute because the finding that he is an SVP occurred after enactment of the amended statutes. The appellate court further held that once the indeterminate term had been imposed, the 2006 petition, (the only one for which the term of commitment had not expired), was moot, and appellant was not entitled to a trial on that petition.

Appellant's case is distinguishable from those relied upon by the appellate court. In this case, although the trial at which he was determined to be an SVP occurred after enactment of the indeterminate term statute, a true finding was never made, during the commitment periods at issue (July 2002 to July 2004 and July 2004 to July 2006), that he is an SVP. In each of the aforementioned cases, the defendants were subjected to indeterminate terms based on SVP findings on current petitions. In other words, the two-year terms to

24

which the Petitions applied had not yet expired.

In Turner v. Superior Court (2003) 105 Cal.App.4th 1046, the

Fourth Appellate District held that a jury's finding on a given SVP

petition does not collaterally estop proceedings on a subsequent

petition. The court explained that the issue in each Petition is

different because each commitment proceeding requires a new

finding as to the defendant's current mental condition:

> The likelihood of a person committing criminal
> acts because of a mental disorder is not a fixed
> condition because an individual's mental health
> and potential dangerousness can, and frequently
> does, change. (Id., p. 1058-1059.)

In People v. Litmon (2008) 162 Cal.App.4th 383 the Sixth

Appellate District reversed an order imposing an indeterminate term

of commitment held, consistent with appellant's arguments, that an

SVP trial must be held in advance of the potential commitment term,

and failure to do so constitutes a denial of due process in that a jury

cannot determine one's "current dangerousness" with respect to a

given time period, after expiration of that time period.

> . . . we firmly believe that the norm to
> comport with the demands of procedural
> due process in the context of involuntary
> SVP commitments must be a trial <u>in</u>
> <u>advance of the potential commitment term</u>
> since, under California law, the individual
> alleged to be an SVP is confined pending
> final determination of an SVP petition.
> When an SVP petition does not take place
> until after or into the term of commitment at
> issue, <u>the trier of fact never actually</u>
> <u>determines whether the person *was* an SVP</u>
> <u>while confined pending trial following</u>
> <u>expiration of the last-ordered commitment.</u>

(<u>Id</u>., at 401.)

Here, the Petitions at issue alleged that the appellant was an

SVP who should be confined from July 2002 to July 2004 and from

July 2004 to July 2006. The appellant had <u>completed</u> both of these

terms of confinement well prior to enactment of the amended statutes,

well prior to the time the Petitions were amended to seek an

indeterminate term and well prior to trial on the Petitions.

Accordingly, ***there never was a finding that the appellant was a***

***currently dangerous SVP at any time during the confinement***

***period for either the 2002 or 2004 petitions.*** It is not logically or

legally possible to find, in December 2006, that the appellant was a

<u>currently dangerous SVP</u> in 2002, 2003, 2004, or any prior time

26

period.[7] Thus, the application of the amended, indeterminate term to the appellant in December 2006 constitutes an invalid, retroactive application of the amended statutes and the validity of the true findings on the 2002/2004 petitions were invalid ab initio. The situation is analogous to that of a potential parolee: as this court recently explained in In Re Lawrence (2008) 44 Cal.4th 1181, a parole board may not simply look to the prisoner's underlying crime to determine his eligibility for parole; rather, the relevant inquiry is the applicant's "current dangerousness" to society. The same is true here. Felix was entitled to a finding of his current condition, prior to the commencement, or at least prior to the *expiration*, of the Petition term.

Based on the holding of Litmon and the other authorities cited

---

[7]

Indeed, the prosecution doctors who opined that Felix was a currently dangerous SVP based their opinions, in part, on interviews and reports which post-dated the start of the commitment periods at issue and thus would not have even existed if Felix had been tried, as he should have been, prior to the commencement of each Petition period. (See, for example, RT 505-506), in which Dr. Arnold testifies at the trial of the 2002 and 2004 Petitions based on an evaluation of Felix which he prepared in October 2006 and Dr. Scherrer's reliance on reports he prepared from 2000 through 2006. (RT 46-48.)

herein, the December 2006 SVP finding is invalid because it was made long after expiration of the two-year terms sought in the petitions at issue. Affirmance of that finding, and of the trial court's imposition of an indeterminate term based on that invalid finding , constitutes an unconstitutional retroactive application of the amended statutes, and a violation of the appellant's constitutionally guaranteed right to due process of law.

Moreover, the only Petition which addressed a commitment term which had not yet expired at the time of Petitioner's trial, was the 2006 petition, and that Petition was never tried. To the contrary, that Petition, the only arguably valid Petition in the fall of 2006, was dismissed over the appellant's objection. What's more, because the time-frame asserted in the 2006 petition has now expired, appellant cannot be tried on that Petition. Accordingly, since there has not been and cannot be any valid finding that the appellant is currently an SVP, he is entitled to immediate release.

## III.

# THE COURT OF APPEAL ERRED IN VIOLATION OF THE APPELLANT'S DUE PROCESS RIGHTS, IN AFFIRMING THE TRUE FINDINGS ABSENT ALLEGATIONS OR PROOF OF A "RECENT OVERT ACT"

As is set forth above, SVP Petitions may only be initiated against persons in the custody of the Department of Corrections ("DOC"). (§6601, subd. (a)(1).) Typically the SVP-candidate is in the custody of the DOC as a result of his conviction for a sex crime when SVP proceedings are commenced. This truism presents a dilemma, however, which was recognized in People v. Martin (1980) 107 Cal.App.3d 714, in the context of the Mentally Disordered Sex Offender ("MDSO") law, a precursor of the SVP law.

In Martin, the court recognized that because most SVP candidates are in custody and thus unable to commit new sex offenses, it becomes very difficult for the State to prove that these inmates are imminently likely to re-offend when released. Accordingly, Martin held that when an MDSO-candidate has been

29

imprisoned, the State need not point to any recent sexual misconduct

to show that his mental disorder is not in remission. Specifically, the

Martin court held:

> Appellant also argues that due process always
> demands that a prediction of dangerousness be
> corroborated by a *recent overt act* in indicating
> dangerousness. We reject this contention. We
> need not address the question of whether such a
> requirement should be imposed in some contexts;
> we are satisfied that no such requirement should
> exist in the present one. Due process does not
> require that the absurd be done before a
> compelling state interest can be vindicated. As in
> the present case, an MDSO may have a
> predisposition to commit a specific type of sexual
> offense—one that cannot, as a practical matter, be
> committed during confinement. " (Martin, supra,
> 107 Cal.App.3d 725 [italic emph. in original;
> underlined emph. added].)

The Martin rationale—that the state does not have to prove a

recent overt act when the appellant was effectively precluded, by

virtue of his custody, of committing a recent overt act-- was later

incorporated into section 6600, subdivision (d) of the SVPA, which

provides that proof that a person presents a "'[d]anger to the health

and safety of others' does not require proof of a recent overt act while

the offender is in custody." [emph. added.]

30

This language begs the question of whether the requirement

that the state does not have to prove a "recent overt act" if the

offender is in custody necessarily implicates the "negative pregnant"

of that provision: that the state does have to prove a "recent overt act"

if the offender has not been in custody.

Such is the situation here. In this case, appellant had

completed his prison term for the underlying sex crimes, and was

paroled in 1993. He remained at large in the community for

approximately two years without committing any new sex crimes.[8]

---

8

The Court of Appeal's emphasis on the fact that the appellant
suffered several parole violations during this period is irrelevant in
that none of the parole violations involved sex crimes. Its reference
to a "stalking" allegation is patently unfair. This stalking complaint
was, after a full hearing, dismissed as unsubstantiated and the
appellant was not returned to custody as a result of it. (RT 10/6, p. 78-
79, 10/11, p. 325-340.) The woman involved had assisted the
appellant in preparing his resume while he was on parole. (RT 10/11,
326-327.) Several months later, the appellant fortuitously saw her on
the street and waived to her from his car and called out a greeting as
he was circling the block waiting for his girlfriend. (RT 10/11, 328,
335.) Four or five months later, he again fortuitously saw the woman
on the street. He was in his car, about to turn into his bank parking
lot to use the ATM machine. She was on her bicycle riding into the
same bank parking lot. He said "hi" and she became hysterical,
saying "stay away from me. I don't want anything to do with you."
(Apparently the women had been advised by Felix's parole officer
that he was a "serial rapist" and she was frightened of him.). Later on

31

He was not subjected to SVP proceedings until his arrest in 1996.

That arrest was not for a new sexual offense; rather, it was a

misdemeanor, non-sexual drunk in public arrest. (RT 10/6, p. 79, RT

10/11, p. 343, RT 10/10, p. 206, RT 10/13, p. 323, CT 18-20.)

Appellant contends that, since he was out of custody for an extended

period of time, the State is required to allege and prove a recent overt

act in order to proceed on the Petitions. It did neither.

**A.**    **Principles of statutory construction compel a finding that it is necessary to allege and prove a recent overt act when the SVP candidate has been out of custody for an extended period of time**

It is a basic principle of statutory construction that courts

should "avoid surplusage, give effect to each portion of the statute

and harmonize each part of the entire statutory scheme." (Fontana

Unified School District v. Burman (1988) 45 Cal.3d 208, 221; People

v. Avena (1996) 13 Cal.4th 394, 427; In re Luke W. (2001) 88

Cal.App.4th 650, 656.)

---

that day, he was advised that the woman had reported that he was
"stalking" her.) Luckily, the appellant had been followed that day by
a task force assigned to monitor released sex offenders. The task
force officers apparently discerned no stalking behavior and the
subsequent investigation of the complaint resulted in dismissal of the
charge as unsubstantiated. (RT 1-0/11, 333-334, 336)

32

With respect to §6600, subdivision (d), ("'Danger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody"), the words "while the offender is in custody" are plainly surplusage unless they are construed to have a specific and intended meaning. That meaning is plain and consistent with the Martin decision: if the person has been in custody, and thus unable to commit a "recent overt act" the State will not be required to prove such an act. If however he has not been in custody, and thus has had the ability to commit a recent overt act, the State should have to allege and prove that he has done so. If the Legislature had intended to exempt all cases from proof of a "recent overt act" it could have easily done so by stating: "'[d]anger to the health and safety of others' does not require proof of a recent overt act" and omitting the "while the offender is in custody" language. That the Legislature included this language is dispositive of its intent. (See United States v. Monsanto (1989) 491 U.S. 600, 611, 109 S.Ct. 2657, citing United States v. Naftalin (1979) 441 U.S. 768, 773, 99 S.Ct. 2077 ["The short answer is that Congress did not write the statute that way."].) The alternative interpretation requires a finding that the

33

words "while the offender is in custody" has no meaning at all, a

conclusion which flies in the face of the established rules of statutory

construction.

**B.** **Due process requires a finding that the appellant must have committed a 'recent overt act' if the petition is initiated after he has been out of custody following his last sexual violation**

Although this issue appears to present a question of first

impression in California, it is not without precedent. At least two

other state Supreme Courts have ruled that an SVP candidate must

have committed a "recent overt act" if the petition is initiated after he

has been released for his last sexual violation.

In In re Young (Wash., 1993) 122 Wn.2d 1, 857 P.2d 989, the

Washington Supreme Court held that to prove an SVP petition

against a person not in custody at the time the petition is initiated, the

state must show that the suspected predator engaged in a "recent overt

act" of criminal sexual misconduct. Young distinguished the problem

before it from the proposition that the state must prove a "recent" act

against a suspected predator who has bee incarcerated for a protracted

period prior to the filing of the commitment petition. In that regard,

34

the Young court cited Martin, supra, 107 Cal.App.3d at 725, with

approval. (Young, supra, 122 Wn. at 41.) The Young court went on

to make the crucial distinction that Martin declined to make:

> . . . where an individual has been released from
> confinement on a sex offense and lives in the
> community immediately prior to the initiation of
> sex predator proceedings, the above rationale does
> not apply . . .[and] proof of a recent overt act is
> necessary to satisfy due process concerns when an
> individual has been released to the community.
> (Id., citing In re Harris (1982) 98 Wn.2d 276, 284,
> 654 P.2d 109.) When an individual has been in
> the community, the State has the opportunity to
> prove dangerousness through evidence of a recent
> overt act. We construe statutes to render them
> constitutional. Therefore, we hold that the State
> must present evidence of a recent overt act . . .
> whenever the individual is not incarcerated at the
> time the petition is filed. (Id.)

Although the Young court did not directly address the exact

question specifically before this court–whether it is Constitutional to

file an SVP petition when the suspected offender is in custody, but

not for a sexual offense, that question was answered in appellant's

favor in In re Gonzalez (Iowa Sup. Ct. 2003) 658 N.W.2d 102.

Gonzalez, like appellant here, was confined for a non-sexual

offense at the time the petition against him was initiated. He argued

35

that prosecution of the SVP proceedings violated due process and that

their resolution against him was unsupported by substantial evidence.

(Id., at 102-103.) His analysis commenced with Iowa's statutory

scheme, which, unlike California's, distinguishes between petitions

initiated against suspected predators who are in custody and those

who are not; in the later instance, the statutes require proof of a

"recent overt act". Gonzalez argued that because he was in custody

exclusively for non-sexual conduct, he was in parity with persons

who were not confined at all and that the state had to prove a "recent

overt act." The state argued that the statutes contained no such

explicit requirement and that if the Legislature had so intended, "it

would have said so." (Id., at 104.) The Iowa Supreme Court rejected

the state's argument on due process grounds. The court noted:

> [b]y interpreting the statute as the State urges us
> (applying the 'confined person' basis for
> commitment) the State would be relieved of
> showing a "recent overt act." . . . [T]he result
> would not be a reasonable application of the
> statute because it would allow the State to reach
> back in time, seize on a sexually violent offense
> for which defendant was discharged, and couple
> this with a present confinement for a totally
> different–or even perhaps a trivial –offense and
> use Chapter 229A to confine the person –This

36

would raise serious Constitutional issues. (Id., at
104-105.)

The Iowa Supreme Court concluded that the Petition against

Gonzalez must fail "[b]ecause Gonzalez was not confined for a

sexually violent offense at the time the petition was filed, and the

State failed to prove, or even allege, a recent overt act." (Id., at 106.)[9]

The Constitutional approach adopted by Gonzalez is impelled

by decisions of the federal courts construing the Due Process Clause

of the federal Constitution. Confinement as a predator must be

predicated on a showing that the suspected offender likely will be

dangerous in the sense that he cannot control his behavior. (Kansas v.

Crane (2002) 534 U.S. 407, 122 S.Ct. 867.)

> While the actual assessment of the likelihood of
> danger calls for an exercise of medical judgment,
> the sufficiency of the evidence to support such a
> determination is fundamentally a legal question.
> A mere expectancy that danger-productive

---

9

The appellate court in this case found that Gonzales is
distinguishable because the Iowa statute "expressly obligated the trial
court to fid that the person had committed a recent overt act." But
Gonzalez was confined. He, like Felix, was confined for a non-sexual
offense. On these facts, the Iowa court held he was akin to one who
was not confined at all, and thus the state was required to prove a
recent overt act.

37

> behavior might be engaged in does not rise to the
> level of legal significance when the consequences
> of such an evaluation is involuntary commitment.
> To confine a citizen against his will because he is
> likely to be dangerous in the future, *it must be*
> *shown that he has actually been dangerous in the*
> *recent past and that such danger was manifested*
> *by an overt act*, attempt or threat to harm . . .
> another. (Lynch v. Baxley (M.D. Ala. 1974) 386
> F.Supp. 378, 391 [emph. added], cited in
> Gonzalez, supra, 658 N.W. 2d at 105.)

The Court of Appeal relies on several other federal cases for

the proposition that the failure to allege and prove a recent overt act

does not constitute a due process violation. (Slip Opin. pp. 21-22.)

However, these cases merely establishes a split of authority on the

subject, a split which has not, but which should be, resolved by this

court with respect to California law.

In summary, the appellant's last act of criminal sexual violence

occurred a quarter century ago. What distinguishes his case from

many other sexual predator cases in which the last act of sexual

violence was years before, is the fact that the appellant was released

into the community where he lived for approximately two years

without engaging in any new criminal sexual violence. The state has

neither alleged nor proven a recent overt act of criminal sexual

38

violence which is implicitly required by California's statutory scheme
and which is required by the Due Process Clause of the state and
federal Constitutions. He contends that, on these facts, he is entitled
to dismissal of the Petitions against him and to immediate release.
Courts across the nation have reached differing conclusions as to
whether due process requires proof of a recent overt act under these
circumstances. Review should be granted to settle this important
question within the context of California law.

## CONCLUSION

For all the foregoing reasons, review should be granted to
secure uniformity of decision and to settle these important questions
of law.

Respectfully submitted,

DATED: 1/26/09

MAZUR & MAZUR

By: _____
JANICE R. MAZUR, Attorney
for appellant/petitioner Scott
Felix

39

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Brief contains 7902 words,

as counted by the WordPerfect word processing program used to

generate this brief.

DATED: 1/26/09

JANICE R. MAZUR, attorney
for appellant/petitioner

40

COPY

Filed 12/16/08

## CERTIFIED FOR PARTIAL PUBLICATION*

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

THE PEOPLE,

Petitioner and Respondent,

v.

SCOTT EMERSON FELIX,

Respondent and Appellant.

A115717

(City & County of San Francisco
Super. Ct. No. 109100)

Felix challenges his civil commitment after a jury trial to an indeterminate term of confinement as a sexually violent predator pursuant to the Sexually Violent Predators Act as amended on September 20, 2006. The jury trial took place during October 2006. We affirm.

### BACKGROUND

In 1982, Scott Emerson Felix was convicted of three counts of false imprisonment (Penal Code, § 236) against three separate victims, two counts of oral copulation and one count of rape against two additional victims, and one count of assault with the intent to commit rape against a sixth victim. The crimes were committed in April, October, and September 1982. In each case, Felix approached strangers on the street or in other public places, used threats or force against them, and attempted to or succeeded in forcing them

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, III, V, and VI.

1

to perform sexual acts on him. For these crimes, Felix was sentenced to 19 years four months in prison.

Felix was released on parole sometime before 1993. He had numerous parole violations between October 1993 and December 1995. In May 1994, his parole was revoked for six months. He had been charged with several crimes, including assault and battery, possession of a dangerous weapon, possession of stolen property, and threats or harassment. In March 1995, Felix's parole was revoked for one month, based on a curfew violation, dishonesty, and noncooperation. In August 1995, Felix was arrested for stalking, but his parole was continued. In March 1996, Felix's parole was revoked for nine months for being drunk in public.

While Felix was in custody for the March 1996 parole revocation, the People filed a petition to commit him as a sexually violent predator (SVP) pursuant to the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code section 6600 et seq.[1] Felix was found to be an SVP, was committed to a two-year term, and, pursuant to subsequent petitions to extend his commitment, was ultimately committed through July 22, 2002.

The People filed a petition to extend Felix's commitment from July 22, 2002 to July 22, 2004 (2002 petition). A trial still needed to be held on that petition when July 22, 2004 was approaching, so the People filed a second petition to extend Felix's commitment from July 22, 2004 to July 22, 2006 (2004 petition). The 2002 and 2004 petitions were consolidated in 2004. A trial had still not been held on the consolidated petitions as the expiration date of July 22, 2006 was approaching, so the People filed a third petition to extend Felix's commitment from July 22, 2006 to July 22, 2008 (2006 petition).

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

As of July 2006, the consolidated 2002 and 2004 petitions had been assigned to Judge Mary Morgan for trial. When the 2006 petition was filed, Felix challenged Judge Morgan pursuant to Penal Code section 170.6, and the 2006 petition alone was assigned to Judge James J. McBride. A probable cause hearing was held on the third petition and probable cause was found to exist. The 2006 petition was eventually scheduled to go to trial October 6, 2006.

On August 1, 2006, Felix filed a motion to dismiss the 2006 petition on the ground of "judicial estoppel." He argued the People were estopped from bringing the petition by virtue of a consent decree California entered into in *United States v. California* (C.D. Cal., 2006, No. CV-06-2667-GPS) (*Mayberg*). Felix argued that the 2006 petition, which was based on a primary diagnosis of "paraphilia not otherwise specified," conflicted with a term of the consent decree. He argued the consent decree was binding on the People in the instant action under the doctrine of judicial estoppel. The relevant section of the consent decree required the Department of Mental Health (DMH) to ensure that clinically justified diagnoses be provided for each individual under its care and particularly that any "not otherwise specified" diagnoses be "timely addressed (i.e. within 60 days), through clinically appropriate assessments, and resolved in a clinically justifiable manner." Felix argued, "The state seeks to continue detaining Felix on the basis of a diagnostic theory which the state previously repudiated via a voluntary agreement before a Federal Judge. . . . The state must either refine its diagnosis *now*, or dismiss the instant petition." The People opposed the motion, arguing paraphilia not otherwise specified is an appropriate diagnosis under SVPA and that nothing in the consent decree bars the state from seeking SVPA commitment of an individual with that diagnosis.

On August 8, 2006, Felix filed a second motion to dismiss the 2006 petition, which argued that the court's probable cause finding was unsubstantiated because the People failed to allege or prove at the hearing that Felix committed a "recent overt act" of criminal sexual violence prior to the initiation of SVPA proceedings in 1996. The People

3

opposed the motion, arguing the SVPA does not require proof of a recent overt act before a commitment petition may be filed.

On September 11, 2006, Judge McBride denied both motions.

On September 8, 2006, the People moved to consolidate the three pending petitions for trial. The motion was denied. The consolidated 2002 and 2004 petitions remained scheduled for trial before Judge Morgan. The third petition, filed July 2006, was scheduled for trial before Judge McBride.

On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006 (Stats. 2006, ch. 337; hereafter, Senate Bill No. 1128), which was urgency legislation that went into effect immediately. (Stats. 2006, ch. 337, § 62.) Among other things, Senate Bill No. 1128 changed the term of commitment for SVPs from two years to an indeterminate term. (§ 6604; Stats. 2006, ch. 337, § 55.)

On September 27, 2006, the People moved to amend the pending petitions against Felix so that each would seek commitment for an indeterminate term. On October 3, Judge Morgan granted the motion as to the consolidated 2002 and 2004 petitions "without in any way indicating what kind of commitment I would make if, in fact, the jury found the petition to be true." The court added, "We will litigate that issue later if there is any reason to." As far as the record discloses, Judge McBride never ruled on the motion as to the 2006 petition.

A jury trial on the consolidated 2002 and 2004 petitions took place in October 2006. In the meantime, trial was continued on the 2006 petition. On October 18, 2006, the jury found that Felix was a SVP as defined in section 6600. On October 20, following legal argument on the issue of the appropriate term of commitment, the court committed Felix for an indeterminate term. On October 23, Judge McBride dismissed the 2006 petition over Felix's objections.

4

On October 26, 2006, Felix filed a notice of appeal from the judgment and commitment entered October 20 and the dismissal of the 2006 petition entered on October 23.

## DISCUSSION

I.    *Statutory Authority to File Petition to Extend Petition**

Felix argues Senate Bill No. 1128's amendments to the SVPA eliminated statutory authority to file a petition to extend an existing SVP commitment. We first review the statutory scheme in effect before the September 2006 amendments (former SVPA).[2]  We then review the changes effected by the September 2006 amendments. Finally, we address Felix's argument.

### A.    *Former SVPA*

Under the former SVPA, the Department of Corrections was required to screen prisoners approaching their release dates to determine if they might be sexually violent predators (SVPs). After screening, if a suspicion existed, the prisoners were referred to the State Department of Mental Health (DMH) for evaluations about whether they met statutory criteria for designation as SVPs. (Former § 6601, subds. (a)(1), (b); Stats. 1999, ch. 136, § 1.)  If DMH determined they met those criteria, it requested that the appropriate counties file petitions for commitment, and if the counties' designated

---

* See footnote, *ante*, page 1.

[2]    For purposes of clarity, we refer to provisions of the former SVPA (in effect before the September 20, 2006 amendments) in the past tense as "former sections" and provisions adopted by the September 2006 amendments in the present tense as "sections," even though those amendments have been superseded by an initiative adopted by the voters in November 2006 (Proposition 83). Most of the provisions of Senate Bill No. 1128 and the initiative are the same; where they materially differ, we note the difference in a footnote.

counsel concurred, the petitions were verified. (Former § 6601, subds. (h), (i); Stats. 1999, ch. 136, § 1.)

If the superior court determined that a petition established probable cause that the person named was likely to engage in sexually violent predatory criminal behavior upon his or her release, the court ordered a trial on whether the person was an SVP, and ordered the person confined until trial. (Former § 6602, subd. (a); Stats. 2000, ch. 41, § 3.) If after trial the person was found to be an SVP, he was committed to the custody of the DMH for a period of two years. (Former § 6604; Stats. 2000, ch. 420, § 3.) The SVP could "not be kept in actual custody longer than two years unless," as relevant here, "a subsequent extended commitment [wa]s obtained from the court incident to the filing of a petition for extended commitment under this article . . . ." (Former § 6604; Stats. 2000, ch. 420, § 3.) "For any subsequent extended commitments, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment." (Former § 6604.1, subd. (a); Stats. 2000, ch. 420, § 4.)

The former SVPA did not include a section that specifically authorized the filing of petitions for extended commitment. Instead, it provided that "subdivisions (c) to (i), inclusive, of Section 6601 shall apply to . . . extended commitments" and that the "rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings." (Former § 6604.1, subd. (b); Stats. 2000, ch. 420, § 4.) Former section 6601, subdivisions (c) to (i) governed DMH evaluations to determine if individuals met the statutory criteria of SVPs, and former section 6603 governed SVP trial procedures. (Former § 6601, subds. (c)-(i); Stats. 1999, ch. 136, § 1, former § 6603; Stats. 2001, ch. 323, § 2.)

Former section 6601, subdivisions (a) and (b), which were *not* made applicable to petitions to extend commitments, governed the screening process for individuals in Department of Corrections custody. (Former § 6604.1, subd. (b); Stats. 2000, ch. 420, § 4.) Section 6601, subdivision (a)(2) provided: "A petition may be filed under this

6

section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed."[3] (Former § 6601, subd. (a)(2); Stats. 1999, ch. 136, § 1.) In context, a petition "filed under this section" must be interpreted to mean a petition that was initiated under former section 6601, subdivision (a)(1), i.e., by a Department of Corrections screening of individuals in its custody. If a petition "filed under this section" was interpreted to mean any petition filed under former section 6601 or under the former SVPA, the language would have precluded the filing of any petitions to extend SVP commitments, even though the former SVPA clearly anticipated that extension petitions could be filed. Persons subject to extension petitions were previously committed as SVPs and therefore were in the custody of the DMH rather than the Department of Corrections.

   B.   *September 2006 Amendments (Senate Bill No. 1128)*

Senate Bill No. 1128's amendments to the SVPA were in effect in October 2006 when Felix was tried and ordered committed for an indeterminate term.[4]

As amended by Senate Bill No. 1128, section 6604 provides in relevant part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an *indeterminate term* to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . ." (§ 6604;

---

[3]   The rest of subdivision (a)(2) addressed the issue of how the SVP proceedings would be affected if the Department of Corrections custody was later found to be unlawful.: "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (Former § 6601, subd. (a)(2); Stats. 1999, ch. 136, § 1.)

[4]   At the November 7, 2006 General Election, the voters approved Proposition 83, an initiative measure, which is very similar to Senate Bill No. 1128. (See Deering's Ann. Welf. & Inst. Code (2008 supp.) note foll. § 6600, p. 43.) The law adopted by Proposition 83 went into effect November 8, 2006. (*Ibid.*)

Stats. 2006, ch. 337, § 55, italics added.) Once committed, the person is evaluated annually by DMH personnel. (§ 6605, subd. (a); Stats. 2006, ch. 337, § 57.) If the DMH determines the person is no longer an SVP, it must seek judicial review of the commitment. If the court finds the person is no longer an SVP, it must unconditionally release him or her. (§ 6605, subd. (f); Stats. 2006, ch. 337, § 57.) The person committed may also petition for release. (§ 6605, subd. (b); Stats. 2006, ch. 337, § 57.) If the court finds probable cause to believe the committed person's condition has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, the court sets a hearing on the issue at which the state bears the burden of proof beyond a reasonable doubt. (§ 6605, subds. (c), (d); Stats. 2006, ch. 337, § 57.)

As amended by Senate Bill No. 1128, section 6604.1, subdivision (a) provides: "The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section." (§ 6604.1, subd. (a); Stats. 2006, ch. 337, § 56.) All references to an extended commitment in sections 6604 and 6604.1 were deleted by Senate Bill No. 1128.[5] (§§ 6604, 6604.1; Stats. 2006, ch. 337, §§ 55, 56.)

---

[5] Proposition 83 did not amend section 6604.1, subdivision (b) in the same manner as did Senate Bill No. 1128. It retained references to extended commitments in that subdivision, which now reads as it did before the 2006 amendments: "The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings." (§ 6604.1, subd. (b); former § 6604.1, subd. (b); Stats. 2000, ch. 420, § 4.) As amended by Senate Bill No. 1128, section 6604.1, subdivision (b) provided: "The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed pursuant to a trial conducted pursuant to subdivision (f) of Section 6605. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings." (§ 6604.1, subd. (b); Stats. 2006, ch. 337, § 56.) Section 6605 governs petitions for release from an indeterminate term of commitment. (§ 6605; Stats. 2006, ch. 337, § 57.)

8

### C.   *Statutory Authorization to File Extended Commitments*

We reject Felix's argument that Senate Bill No. 1128 eliminated statutory authorization to file petitions to extend the commitments of persons who were already committed as SVPs at the time Senate Bill No. 1128 went into effect. In doing so, we join two other courts that have reached the same conclusion. (See *People v. Shields* (2007) 155 Cal.App.4th 559, 561; *People v. Carroll* (2007) 158 Cal.App.4th 503, 510; see also *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1279-1280 [Proposition 83 did not eliminate statutory authority to extend the commitments of persons already committed as SVPs at time initiative took effect].)

The guiding principle of statutory interpretation is to ascertain and give effect to legislative intent. (*People v. Robles* (2000) 23 Cal.4th 1106, 1111.) Because statutory language generally is the most reliable indicator of legislative intent, we turn first to the words of the statute themselves, giving them their usual and ordinary meaning and construing them in context. (*Ibid.*) "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain language of the statute governs. [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent. [Citation.]" (*Ibid.*)

The language of Senate Bill No. 1128 is ambiguous about whether a petition for indeterminate commitment can be filed against a person already committed to the custody of the DMH as an SVP. First, section 6601, subdivision (a)(2) does not clearly preclude such petitions, as Felix argues. If read in isolation, the subdivision could be understood to limit the class of persons subject to petitions for SVP commitment to persons in the custody of Department of Corrections. However, this language was adopted without change from the former SVPA and, as explained above, under the former SVPA the language did not preclude petitions for extended commitment. Rather, section 6601,

9

subdivision (a)(2) referred only to petitions that were initiated by a Department of Corrections screening process.

Second, Senate Bill No. 1128's amendments to sections 6604 and 6604.1 do not expressly preclude petitions for extended commitment. Section 6604 provides that, "[i]f the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term . . . ." (§ 6604; Stats. 2006, ch. 337, § 55.) Nothing in this language precludes its application to a petition to *extend* an SVP commitment as distinct from an initial petition to impose an SVP petition. Section 6604.1, subdivision (a) provides, "The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the *initial* order of commitment pursuant to that section." (§ 6604.1, subd. (a), italics added; Stats. 2006, ch. 337, § 56.) The word "initial" in this sentence does not unambiguously refer to an initial petition for an SVP commitment against a person not previously committed as an SVP. It could be understood to refer to an initial term of commitment *for an indeterminate term*, which might be brought against an individual already committed as an SVP but not yet committed to an indeterminate term. (See *People v. Whaley* (2008) 160 Cal.App.4th 779, 798 [so construing "initial" in § 6604.1, subd. (a)].) Finally, section 6604.1, subdivision (b) no longer contains any express references to petitions for extended commitments. However, nothing in the amended subdivision expressly precludes petitions for extended commitments. Indeed, the last sentence easily encompasses such petitions: "The rights, requirements, and procedures set forth in Section 6603 shall apply to *all* commitment proceedings." (§ 6604.1, subd. (b); Stats. 2006, ch. 337, § 56, italics added.)

We conclude, therefore, that the plain language SVPA as amended by Senate Bill No. 1128 is ambiguous on the issue of whether petitions for extended commitments are allowed. Accordingly, we look to other indicia of legislative intent to resolve these ambiguities in the statutory language. Felix has not produced any legislative history of

10

Senate .Bill No. 1128 to guide this process. However, courts have held that the intent of the former SVPA was "to protect the public from a select group of *extremely dangerous offenders* and to provide treatment for those people. [Citation.]" (*Carroll, supra,* 158 Cal.App.4th at p. 510, italics added.) When SVPA was passed in 1995, the Legislature stated its intent as follows: "It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society." (Stats. 1995, ch. 762, § 1 (Senate Bill No. 1143).) Moreover, the primary effect of Senate Bill No. 1128 on the SVPA—changing the two-year term of commitment to an indeterminate term that ends only on a showing that the person is no longer an SVP—strongly implies a purpose to strengthen the state's power to confine persons determined to be SVPs. (See *ibid.*; *Shields, supra,* 155 Cal.App.4th at p. 563.) It would be entirely inconsistent with this purpose to interpret the SVPA as amended by Senate Bill No. 1128 to bar the state from petitioning to extend the commitment of persons already determined to be SVPs. If the state did not have this power, those SVPs would have to be released at the end of their determinate terms without any showing that their condition has so changed and improved that it was no longer likely they would commit a sexually violent crime once discharged. They could not be subjected to new SVP proceedings unless and until they came into the custody of the Department of Corrections. This result is clearly counter to the legislative purpose in enacting the original SVPA in 1995 and in amending it in 2006.

We therefore construe the SVPA as amended by Senate Bill No. 1128 to authorize the state to file petitions seeking to extend the commitment terms of persons who were already committed as SVPs at the time Senate Bill No. 1128 went into effect.[6]

---

[6]    Because we conclude the statutory language is ambiguous and is most reasonably interpreted to authorize the filing of extension petitions in light of the Legislature's intent, we need not decide whether to supply missing statutory terms under the theories of an

11

Section 6601, subdivision (a)(2) applies only to petitions filed against persons who are initially identified as possible SVPs while in the custody of the Department of Corrections, pursuant to subdivisions (a) and (b) of section 6601. Subdivisions (c) to (i) of section 6601 authorize, as they did under the former SVPA, DMH to evaluate persons already committed as SVPs, determine if they are still SVPs, and request that counties file petitions for extended commitment; and authorize county counsel to file such petitions.[7]

II.     *Retroactive Application of Senate Bill No. 1128**

Felix argues that application of Senate Bill No. 1128 to the consolidated 2002 and 2004 petitions violates his due process rights.[8]

In addressing a retroactivity challenge, we first determine whether the law has been retroactively applied. If so, we decide whether the Legislature intended that the statute be applied retroactively. If we find the Legislature did so intend, we consider whether the retroactive application is constitutional. (*Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 979.)

"In order for a law to be retrospective, it must apply to events occurring before it was enacted. [Citation.] Stated another way, '[a] statute has retrospective effect when it substantially changes the legal consequences of *past* events. [Citation.].' [Citation.] 'Thus, the critical question for determining retroactivity usually is whether the *last act or*

---

implied savings clause (see *Bourquez, supra,* 156 Cal.App.4th at pp. 1283-1287), or drafters' error (see *Shields, supra,* 155 Cal.App.4th at p. 564; *Carroll, supra,* 158 Cal.App.4th at p. 510).

[7]     Section 6601 was amended in 2008 in ways that do not affect our analysis. (See, Stats. 2008, ch. 601 (Senate Bill No. 1546).)

*     See footnote, *ante*, page 1.

[8]     Felix acknowledges that the ex post facto clause does not apply because the SVPA is a nonpunitive civil law. (See *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1179.)

12

*event necessary to trigger application of the statute* occurred before or after the statute's effective date. [Citations.] A law is not retroactive "merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." [Citation.]' ([Citation], italics added.)" (*Carroll, supra,* 158 Cal.App.4th at p. 513.)

We agree with all published decisions addressing the issue that applying the 2006 amendments to petitions for extensions of commitments that go to trial after the effective date of the amendments is not a retroactive application of the law. (*Carroll, supra,* 158 Cal.App.4th at pp. 512-514; *Bourquez, supra,* 156 Cal.App.4th at p. 1289; *Whaley, supra,* 160 Cal.App.4th at p. 799.) The issue at the trial on an extension petition is whether the person is an SVP *at the time of commitment.* (*Carroll*, at pp. 513-514.) Each SVP trial is a new and independent proceeding. (*Bourquez*, at p. 1289.) Applying current law to a determination of the respondent's current status is not a retroactive application.

Felix argues his case is distinguishable because at the time of the October 2006 trial, the terms of commitment sought in the original 2002 and 2004 petitions had expired (on July 22, 2006). Delays of the sort experienced by Felix were not uncommon under the former SVPA. (See *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1170.) In *Orozco v. Superior Court*, the court of appeal held that the trial court did not lose jurisdiction over an extension petition even though the term of commitment sought by the petition expired before a trial could be held on the petition, and held that the delay did not violate the respondent's due process rights where it was attributable to the respondent or his attorney. (*Orozco v. Superior Court* (2004) 117 Cal.App.4th 170, 179-180.) "Given the absence of statutory time limits, the Courts of Appeal have implied that the only act that could divest the court of subject matter jurisdiction and trigger a dismissal is the People's failure to file a petition for recommitment before the prior commitment expires." (*Litmon*, at p. 1171.) Felix does not argue that the delay in the proceedings violated his due process rights. Because the court had jurisdiction over the petitions,

13

even though the terms of commitment sought in the petitions had expired, the court had the power to allow the People to amend the petitions to apply current law. For the reasons explained above, the application of that law was not retroactive. Therefore, Felix's challenge to the amendment fails.

III.     *Estoppel by Consent Judgment in Mayberg[9] ***

In *Mayberg*, the United States Department of Justice sued the State of California, DMH Director Stephen Mayberg (in his official capacity only), and other state officials "to remedy an alleged pattern or practice of conduct that was alleged to deprive patients of Metropolitan State Hospital, in Norwalk, California, and Napa State Hospital, in Napa, California [State Hospitals] of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States." (*Mayberg, supra,* (C.D. Cal.) CV-06-2667-GPS.) On the same day the complaint was filed, the parties stipulated to a consent judgment requiring the defendants to take measures to improve conditions in the State Hospitals. The court signed the judgment on May 15, 2006. On August 2, 2006, the complaint and consent judgment were amended to encompass Atascadero State Hospital in addition to the other named hospitals.[10]

The thrust of the consent judgment is to require defendants to use a "Recovery philosophy of care and a Psychiatric Rehabilitation model of service delivery" designed to strengthen and support each individual's recovery and rehabilitation. To that end, "Therapeutic and rehabilitation services shall be designed to address each individual's

---

[9]     Although Felix raised this argument in the trial court only with respect to the 2006 petition, which was ultimately dismissed, the parties briefed the issue on the merits as if it were applicable to the consolidated 2002 and 2004 petitions, which resulted in his indeterminate commitment. Therefore, we address the issue on the merits as well.

*     See footnote, *ante*, page 1.

[10]     Felix's request that we take judicial notice of the federal district court docket sheet for *Mayberg* (*United States v. California,* C.D. Cal., *supra*, No. CV-06-2667-GPS) is granted. (Evid. Code §§ 452, subd. (d), 459, subd. (b).)

14

needs . . . ." The judgment imposes detailed requirements for these individual assessments. In the area of psychiatric assessments and diagnoses, the judgment requires defendants to "use the diagnostic criteria of the most current Diagnostic and Statistical Manual of Mental Disorders [ ] for reaching the most accurate psychiatric diagnoses." The judgment sets forth assessment requirements for the first 24 hours and first seven days of the patient's admission to the State Hospital. It then provides, "Each State Hospital shall ensure that: i. clinically justifiable diagnoses are provided for each individual, and all diagnoses that cannot be clinically justified for an individual are discontinued no later than the next review; ii. the documented justification of the diagnoses is in accord with the criteria contained in the most current DSM (as per DSM-IV-TR Checklist); iii. differential diagnoses, 'deferred,' or 'rule-out' diagnoses, and diagnoses listed as 'NOS' ('Not Otherwise Specified') are timely addressed (i.e., within 60 days), through clinically appropriate assessments, and resolved in a clinically justifiable manner; and iv. 'no diagnosis' is clinically justified and documented."

Felix argues the People are judicially estopped from proceeding on the commitment petitions filed against him because the consent judgment precludes the type of diagnosis rendered in his case. He argues "the State of California seeks to continue to detain the defendant indefinitely based on a diagnostic theory which the State has recently and specifically repudiated in a voluntary agreement in a federal court."

Judicial estoppel applies when a party is successful in asserting a position in a judicial proceeding: the party will be estopped from taking a completely inconsistent position in a subsequent judicial proceeding. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.) Felix has not shown that the defendants in the *Mayberg* action successfully *asserted* the position that NOS diagnoses should be timely addressed and resolved in a clinically justifiable manner. Rather, the defendants acquiesced in a consent judgment that imposed this requirement on the State Hospitals.

15

Nor are the People estopped under the doctrine of collateral estoppel. "The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]" (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 (*Producers Dairy*).) A stipulated judgment may properly be given collateral estoppel effect if the parties manifest an intent to be collaterally bound by the judgment, as by stipulating to a specific factual finding. (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664-665 & fn. 2.) Felix argues the consent judgment "implicitly recognized what the introduction to the DSM IV makes clear: 'NOS' diagnoses are inherently limited and imprecise. Although useful as an initial diagnoses [*sic*] pending further investigation, a persistent NOS label as a primary diagnosis may well be a sign that the patient, despite some symptoms of mental disease, may not actually suffer form [*sic*] any identifiable and treatable disease." Neither the DSM IV nor the consent judgment supports this argument.

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) explains: "Because of the diversity of clinical presentations, it is impossible for the diagnostic nomenclature to cover every possible situation. For this reason, each diagnostic class has at least one Not Otherwise Specified (NOS) category . . . . *There are four situations in which an NOS diagnosis may be appropriate*." (DSM-IV-TR (2000) at p. 4, italics added.) First, "[t]he presentation *conforms to the general guidelines for a mental disorder* in the diagnostic class, but the symptomatic picture does not meet the criteria for any of the specific disorders. This would occur either when the symptoms are below the diagnostic threshold for one of the specific disorders or when there is an atypical or mixed presentation." (*Ibid.*, italics added.) Second, an NOS diagnosis may be appropriate if the presentation "conforms to a symptom pattern that has

16

not been included in the DSM-IV Classification but that causes clinically significant distress or impairment." (*Ibid.*) Third, an NOS diagnosis may be appropriate if there is "uncertainty about etiology (i.e., whether the disorder is due to a general medical condition, is substance induced, or is primary)." Fourth, an NOS diagnosis may be appropriate "[i]f there is insufficient opportunity for complete data collection . . . or inconsistent or contradictory information, but there is enough information to place it within a particular diagnostic class." (*Ibid.*) In other words, the DSM lists particular instances when an NOS diagnosis is clinically appropriate in the mental health setting, like the SVP determination.

Felix cites isolated language in these four categories to argue an NOS diagnosis is a "fallback" diagnosis that is "neither complete nor effective," but is "by its nature, tentative or imprecise." As to the first category, Felix emphasizes the language that the symptoms may be "below the diagnostic threshold for one of the specific disorders," but he ignores the language requiring the presentation conform to the general guidelines for mental disorder or providing that an NOS diagnosis might be based on an atypical or mixed presentation rather than on symptoms being below a diagnostic threshold. As to the second category, he emphasizes the language that the symptom pattern has not been included in the DSM, but ignores the language that the pattern "causes clinically significant distress or impairment." As to the third category, he emphasizes the language regarding uncertain etiology, but ignores the fact that the category is not based on uncertainty about the patient's symptoms. As to the fourth category, he emphasizes the language about insufficient information, but ignores the requirement of sufficient information to place it within a particular diagnostic class. Indeed, as to all categories, Felix ignores the fact that the DSM-IV-TR provides such diagnoses "may be appropriate" if they satisfy the listed criteria. Felix's lay opinion that such diagnoses are "incomplete and only preliminary to a true, 'clinically justifiable' diagnosis" is contradicted by the DSM itself.

17

Felix also misrepresents the substance of the consent judgment. The judgment makes no express assertion (or finding) that NOS diagnoses are incomplete and unreliable. Nor does the consent judgment implicitly recognize such an assertion. The judgment requires NOS diagnoses to be addressed and resolved in a "clinically justifiable manner." Nothing precludes a further NOS diagnosis as a "clinically justifiable" resolution of the original diagnosis. The DSM-IV-TR acknowledges that NOS diagnoses may be appropriate. Some of the circumstances in which such a diagnosis is appropriate are based on limited information that might be augmented upon a further diagnosis: for example, newly discovered information about the patient's history that place him or her within a specific classification, symptoms observed at the State Hospital that bring the patient within the diagnostic threshold of a specific classification, or newly discovered information about the etiology of the patient's symptoms. The language relied on by Felix in the consent judgment follows a list of requirements for prompt diagnosis of newly admitted patients. Therefore, the language could be directed primarily at preliminary NOS diagnoses that are based on available information. Nothing in the judgment, however, indicates that an ongoing NOS diagnosis would not be appropriate based on all the information the State Hospital is able to gather about the patient.

It is also significant to this court that the particular DSM diagnosis of "paraphilia NOS" has been the Axis 1 diagnosis in at least two important decisions discussing the legal appropriateness of an SVP finding under the SVPA. In *Hubbart v. Superior Court, supra,* 19 Cal.4th 1138, the mental health disorder determined by the two mental health professionals (Drs. Nelson and Phenix) associated with the People's case was "paraphilia not otherwise specified." (*Id.* at 1150.) In *People v. Williams* (2003) 31 Cal.4th 757 (*Williams*), the same particular mental health Axis 1 diagnosis was reached by the two licensed psychologists for the prosecution (Drs. Sheppard and Franks). (*Id.* at pp. 761-762.) Indeed, Dr. Sheppard concluded that a feature of this condition "predispose[d] [Williams] to sexually violent criminal behavior, as evidenced by his repeated

18

misconduct of this nature and the fact that 'even in a controlled setting [he] continues to sexually act out in about the only way he can.' " (*Id.* at p. 762.) The Supreme Court then noted in *Williams* that the testimony regarding this particular disorder is "ample evidence" of the requisite proof of a serious difficulty in controlling dangerous behavior for purposes of the SVPA. "Both expert witnesses testified that defendant suffers from paraphilia, a serious, incurable mental disorder, which is characterized by the obsessive, repetitive, and driven nature of his criminal sexual violence." (*Id.* at p. 778.)

Finally, even if an NOS diagnosis were insufficient for implementation of the individualized recovery and rehabilitation treatment plans required by the consent judgment, it does not follow that they are insufficient for proof that a respondent is a sexually violent predator. The Legislature and voters have acknowledged that sexually violent predators are a small set of extremely dangerous offenders that are very difficult or impossible to successfully treat. The People relied not only on the psychiatric diagnoses of Felix to prove he was an SVP, but also on his commission of sexually violent predatory crimes and specific psychiatric or psychological observations and assessments of his mental disorder, and dangerousness. The consent judgment in no way compels the People to provide a non-NOS psychiatric diagnosis before it can establish that a respondent is an SVP.

IV. *Proof of Recent Overt Act*[11]

Felix argues proof of his SVP status was insufficient because there was no evidence he committed a recent overt act while he was out of custody.

Section 6600, subdivision (d) provides, " 'Danger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody."

---

[11]     Although Felix raised this argument in the trial court only with respect to the 2006 petition, which was ultimately dismissed, the parties briefed the issue on the merits as if it were applicable to the consolidated 2002 and 2004 petitions, which resulted in his indeterminate commitment. Therefore, we address the issue on the merits as well.

19

(§ 6600, subd. (d); Stats. 2006, ch. 337, § 53; see also Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24.) Former section 6600, subdivision (d) was identical. (Former § 6600, subd. (d); Stats. 1995, ch. 763, § 3, p. 5923.) The statute authorizes commitment if a court or jury determines beyond a reasonable doubt that the person is an SVP. (§ 6604; Stats. 2006, ch. 337, § 55; see also Prop. 83 as approved by voters, Gen. Elec. (Nov. 7, 2006) § 27.) An SVP is defined as "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person *a danger to the health and safety of others* in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1), italics added; Stats. 2006, ch. 337, § 53; see also Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24.)

Felix argues the People were required to prove in this instant case that he committed an overt act while he was released on parole in the mid-1990s. We disagree. The issue before the jury was Felix's status as an SVP at the time of trial. The lack of a "recent" overt act was immaterial because recently (i.e., since 1996) Felix had been in custody. Section 6600, subdivision (d) expressly provided that recent overt acts need not be proven "while the offender is in custody." During the time of the trial we review here, and for approximately ten years before, Felix was "in custody" for purposes of the SVPA. Nor does due process require proof of a recent overt act in such circumstances. "Due process does not require that the absurd be done before a compelling state interest can be vindicated. As in the present case, [a mentally disturbed sex offender] may have a predisposition to commit a specific type of sexual offense—one that cannot, as a practical matter, be committed during confinement." (*People v. Martin* (1980) 107 Cal.App.3d 714, 725.)

Felix contends section 6600, subdivision (d) impliedly requires proof of a "recent overt act" whenever a person named in an SVP petition "has been out of custody for an extended period of time." However, he does not try to reconcile this "recent overt act"

20

requirement with the facts in this particular case, where ten years have elapsed since he was last out of custody, and commitment and recommitment determinations have passed without any challenge, becoming final judgments. Insofar as Felix argues that the facts of this case require the People to address the issue of any recent conduct by Petitioner to satisfy due process concerns, we disagree.

He relies on two cases for his argument. The first is *In re Young* (1993) 122 Wn.2d 1 [857 P.2d 989]. In that case, the petitioner Cunningham had "been released from confinement on a sex offense. . . and lives in the community immediately prior to the initiation of sex predator proceedings. . . proof of a recent overt act is necessary to satisfy due process concerns. . . ." (*Id.* at p. 41 [857 P.2d 1009].) *Young* relied on a 1982 Washington Supreme Court decision, *In re Harris*, which held that recent overt acts had to be proven before an individual could be civilly committed under a statute similar to California's Lanterman-Petris-Short Act, Welfare and Institutions Code section 5000 et seq. (*In re Young,* at p. 41, citing *In re Harris* (1982) 98 Wn.2d 276, 284 [654 P.2d 109, 113].) *Harris* relied in part on the particular language of the Washington statute and in part on two federal opinions that held a recent overt act finding was a due process requirement. (*In re Harris, supra,* at pp. 284-285 [654 P.2d at p. 113].) Significantly, since *Harris,* a number of courts have held the due process clause does not require proof of a recent overt act to establish dangerousness sufficient to warrant a civil commitment. See *Project Release v. Prevost* (2d.Cir. 1983) 722 F.2d 960, 973-974 [listing cases and rejecting the particular requirement]; *Fisk v. Letterman* (S.D.N.Y. 2007) 501 F.Supp.2d 505, 523-524 [proof of overt act not required]; *In re Commitment of Bush* (2005) 283 Wis.2d 90, 95-96 [699 N.W.2d 80, 83], *cert. denied,* 546 U.S. 1004 [rejecting argument that due process requires proof of recent overt act to support SVP determination where there is a break in SVP's incarceration and SVP was recommitted for nonsexual behavior]; *In re Commitment of P.Z.H.* (2005) 377 N.J.Super. 458, 466 [873 A.2d 595, 600] [current incarceration for SVP qualifying offense not required; commitment

21

constitutional regardless of the date of last predicate offense, where the statutory requirements otherwise met]; *Beasley v. Molett* (Tex.App. 2002) 95 S.W.3d 590, 599 [Texas's SVP Act not unconstitutional for failure to require proof of recent overt act, where the statute required proof of repeat sexual offenses and a behavior abnormality making the SVP a "menace to the health and safety of another person"]; and *In the Matter of Maricopa County Cause No. MH-90-00566* (1992) 173 Ariz. 177, 184 [proof of recent overt act not required for civil commitment, where statute required proof by clear and convincing evidence of substantial probability of harm]. This authority is substantial; it supports this court's determination that there is no due process violation with the manner of applying the SVPA to this case.

It is also significant that the courts of Washington have moved away from the degree of reliance petitioner places on the *Young* holding. Simply stated, the SVP statute in Washington does not require proof of a recent overt act when the individual is in "custody." If the person named in the petition was confined or in custody at the time of the petition being filed, and therefore not "living in the community" the "recent overt act" requirement under the statute does not apply. (*In the Detention of Lewis* (2008) 163 Wn.2d 188, 201 [177 P.3d 708, 715].). The rationale of *Young* is therefore limited to its factual predicate. It would not apply in this case where Felix has been in custody for approximately ten years before the trial which is the subject of this appeal.

The other case cited by Felix is *In re Detention of Gonzales* (Ia. 2003) 658 N.W.2d 102. There, the statute in question, when applied to the facts in the case, expressly obligated the trial court to find that the person had committed a recent overt act. Gonzales was not confined at the time the petition was filed. The Iowa statute expressly stated that a proper finding of " '[l]ikely to engage in predatory acts of sexual violence,' " for a non-confined subject, could be found "only if the person commits a recent overt act." (*Id.* at p. 103.) Obviously, the circumstances in this case diffuse reliance on this case interpreting specific provisions of an Iowa statute.

22

The United States and California Supreme Courts have exhaustively examined the issue of what showing is required to confine a sexually violent predator against his or her will consistent with the due process clause. (See, e.g., *Kansas v. Crane* (2002) 534 U.S. 407; *Williams, supra,* 31 Cal.4th 757.) These controlling decisions require a finding of dangerousness to one's self or others that is linked to a mental disorder causing serious difficulty in controlling one's behavior. (*Williams,* at pp. 771-772, discussing *Kansas v. Crane, supra,* 534 U.S. 407.) The decisions do not require proof of recent overt acts as a constitutional minimum for these types of civil commitments. The requirements of two convictions for sexually violent offenses and evidence of a current mental disorder making it likely the individual will reoffend satisfy the due process dangerousness requirement in this context. (*Williams*, at pp. 764, 776.)

Even if the state is required to prove an overt act during Felix's most recent sustained period out of custody, the requirement was satisfied here. During that period (the mid-1990s), Felix was repeatedly returned to custody for parole violations. Dr. Scherrer testified at the 2006 trial that the length of time Felix was out of custody was insufficient to conclude he was not a significant risk of committing further sexually violent offenses. Combined with his prior convictions for sexually violent offenses involving more than two separate victims and the current psychiatric opinion that he had a mental disorder that caused him serious difficulty in controlling his behavior, the totality of this evidence demonstrated sufficient dangerousness to involuntarily commit Felix as an SVP.

V.     *Evaluation by Independent Psychologists*[*]

The SVPA requires that the DMH evaluation of persons to determine whether they are SVPs be conducted by two practicing psychiatrists or psychologists. (§ 6601, subds. (c) & (d); Stats. 2006, ch. 337, § 54.) If the two evaluators concur, the DMH must

---

[*]     See footnote, *ante,* page 1.

23

request that the appropriate county file a petition for commitment. (§ 6601, subd. (h); Stats. 2006, ch. 337, § 54.) If they do not concur, DMH must "arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e); Stats. 2006, ch. 337, § 54.) If the two independent professionals agree the person meets the criteria for commitment, a petition for commitment may be filed. (§ 6601, subd. (f); Stats. 2006, ch. 337, § 54.)

Section 6601, subdivision (g) provides, "Any independent professional who is designated by the Secretary of the Department of Corrections and Rehabilitation or the Department of Mental Health for purposes of this section shall not be a state government employee . . . . The requirements set forth in this section also shall apply to any professionals appointed by the court to evaluate the person for purposes of any other proceedings under this article." (§ 6601, subd. (g); Stats. 2006, ch. 337, § 54.)

Felix argues it was error to allow Dr. Mark Scherrer of Atascadero State Hospital to testify for the People at his probable cause hearing and at trial because Dr. Scherrer was a state government employee. Felix, however, does not show that two practicing psychiatrists or psychologists designated by the DMH to evaluate Felix had disagreed about whether he was an SVP and that the DMH designated Dr. Scherrer as an independent professional to evaluate Felix pursuant to section 6601, subdivisions (e) and (f). Nor does he show that Dr. Scherrer was "appointed by the court." (§ 6601, subd. (g); Stats. 2006, ch. 337, § 54.) His argument fails.

VI.    *Dismissal of 2006 Petition*[*]

Felix argues the trial court should not have dismissed the petition to extend his commitment from 2006 forward. We disagree. That petition became moot when the court ordered Felix committed to an indeterminate term in October 2006. (Cf. *People v. Hayes* (2006) 137 Cal.App.4th 34, 51-52 [invalidity of trial on an extension petition

---

[*]    See footnote, *ante*, page 1.

24

harmless error because simultaneous valid trial on prior petition for an extension term that had all but expired presented essentially the same issue: whether the respondent was an SVP at the time of trial].)

DISPOSITION

The indeterminate term of commitment imposed October 20, 2006 and the dismissal of the 2006 petition are affirmed.

25

_____

DONDERO, J. *

We concur:

_____

SIMONS, ACTING P. J.

_____

NEEDHAM, J.

\* Judge of the Superior Court of San Francisco City and County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Felix* A115717

26

Trial Court                                    City & County of San Francisco Superior Court

Trial Judge                                    Honorable Mary Morgan

For Plaintiff and Appellant                    Mazur & Mazur
                                               Janice R. Mazur, Esq.
                                               William E. Mazur, Jr.

For Respondent                                 Edmund G. Brown Jr.,
                                               Attorney General

                                               Dane R. Gillette,
                                               Chief Assistant Attorney General

                                               Gerald A. Engler,
                                               Senior Asisstant Attorney General

                                               Laurence K. Sullivan,
                                               Supervising Deputy Attorney General

                                               Moona Nandi,
                                               Deputy Attorney General

*People v. Felix,* A115717

27

**COPY**

Filed 1/6/09

## CERTIFIED FOR PARTIAL PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

THE PEOPLE,

Plaintiff and Respondent,

v.

SCOTT EMERSON FELIX,

Defendant and Appellant.

A115717

Court of Appeal, First Apellate District
**FILED**

JAN **6** 2009

Diana Herbert, Clerk

by _____ Deputy Clerk

(City & County of San Francisco
Super. Ct. No. 109100)

ORDER MODIFYING OPINION
[NO CHANGE IN JUDGMENT]

THE COURT:

It is ordered that the opinion filed herein on December 16, 2008, be modified as
follows:

1.  Footnote 2 on page 5 becomes part of footnote 1 on page 2 immediately
following the first paragraph of footnote 1. All subsequent footnotes are renumbered.

2.  On page 20, a new footnote 12 is added in the first paragraph, following
the last sentence as follows:

> An SVP is defined as "a person who has been convicted of a
> sexually violent offense against two or more victims and who has a
> diagnosed mental disorder that makes the person *a danger to the health
> and safety of others* in that it is likely that he or she will engage in sexually
> violent criminal behavior."[12] (§ 6600, subd. (a)(1), italics added; Stats.
> 2006, ch. 337, § 53; see also Prop. 83, as approved by voters, Gen. Elec.
> (Nov. 7, 2006) § 24.)

---

[12]  Proposition 83 changed the language of this subdivision to require a conviction of
a sexually violent offense against "one or more victims" rather than "two or more
victims." (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24.) That change
is not relevant here.

**COPY**

     3.     On page 21, first paragraph, last sentence, the word Petitioner is changed to Felix.

     There is no change in the judgment.


Dated:   JAN 0 6 2009         JONES, P.J.

                                             P. J.

**COPY**

Filed 1/6/09

## CERTIFIED FOR PARTIAL PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SCOTT EMERSON FELIX, <br><br> Defendant and Appellant. | A115717 <br><br> (City & County of San Francisco <br> Super. Ct. No. 109100) <br><br> ORDER CERTIFYNG FOR PUBLICATION <br> PART III |

> Court of Appeal, First Apellate District
> **FILED**
> JAN **6** 2009
> Diana Herbert, Clerk
> by _____ Deputy Clerk

THE COURT:

On December 29, 2008, Attorney General Edmund G. Brown Jr. requested that part III of the opinion that was filed herein on December 16, 2008, that was certified for partial publication in the Official Reports be published. For good cause it now appears that part III of the opinion should be published in the Official Reports and it is so ordered.

Dated:  JAN 0 6 2009

**JONES, P.J.**

P. J.

Trial Court                              City & County of San Francisco Superior Court

Trial Judge                              Honorable Mary Morgan

For Plaintiff and Appellant              Mazur & Mazur
                                         Janice R. Mazur, Esq.
                                         William E. Mazur, Jr.

For Respondent                           Edmund G. Brown Jr.,
                                         Attorney General

                                         Dane R. Gillette,
                                         Chief Assistant Attorney General

                                         Gerald A. Engler,
                                         Senior Asisstant Attorney General

                                         Laurence K. Sullivan,
                                         Supervising Deputy Attorney General

                                         Moona Nandi,
                                         Deputy Attorney General

*People v. Felix,* A115717

## AFFIDAVIT OF SERVICE BY MAIL

I am employed in the State of California, County of San Diego. I am over the age of eighteen and not a party to this action. My business address is 13465 Camino Canada, No. 106, El Cajon, CA 92021.

On January 26, 2009, I mailed documents described as **PETITION FOR REVIEW** via the United States mail in Whitefish, Montana in postage prepaid envelopes to interested parties in this action addressed as following:

See Attached Service List

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 26, 2009.

JANICE R. MAZUR

Service List, People v. Felix, Case No. A115717

Office of the Attorney General
455 Golden Gate Ave.
#11000
San Francisco, CA 94102

Court of Appeal
First Appellate District
350 McAllister St.
San Francisco, CA 94102

San Francisco Superior Court
850 Bryant St.
San Francisco, CA 94103
Attn: Judge Morgan

San Francisco Superior Court
850 Bryant St.
San Francisco, CA 94103
Attn: Judge McBride

Scott Felix (Appellant)

District Attorney
850 Bryant St., Room 322
San Francisco, CA 94103

Kenneth Quigley (Trial Counsel)
650 Fifth St., Suite 502
San Francisco, CA 94107